**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WALL CARDIOVASCULAR TECHNOLOGIES, LLC and CARDIO HOLDINGS LLC,<br><br>Defendants. | Civil Action No. 08-489-SLR |

## AMENDED COMPLAINT

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "Boston Scientific"), for their Complaint against Defendants Wall Cardiovascular Technologies, LLC and Cardio Holdings LLC (collectively, "Wall"), hereby allege as follows.

## THE PARTIES

1. Plaintiff Boston Scientific Corporation is a Delaware corporation having a principal place of business at One Boston Scientific Place, Natick, Massachusetts 01760.

2. Plaintiff Boston Scientific Scimed, Inc. is a Minnesota corporation having a principal place of business at One Scimed Place, Maple Grove, Minnesota 55311.

3. Upon information and belief, defendant Wall Cardiovascular Technologies, LLC ("Wall Cardiovascular") purports to be a Texas limited liability company having a place of business in Marshall, Texas. Upon further information and belief, Wall Cardiovascular does not

manufacture or sell any products, devices or services and has as its principal business model asserting and threatening to assert patents in litigation for money.

4. According to the Certificate of Formation that Wall Cardiovascular filed with the Office of the Secretary of State of Texas, defendant Cardio Holdings LLC ("Cardio Holdings") is the single governing member. Upon information and belief, Wall Cardiovascular is an agent and alter-ego of defendant Cardio Holdings, which is a Delaware limited liability company.

5. Upon information and belief, defendant Cardio Holdings is a Delaware limited liability company having a place of business in Marshall, Texas. Upon information and belief, Cardio Holdings has appointed United Corporate Services, Inc. of Dover, Delaware as its registered agent in Delaware for the receipt of service of process.

## NATURE OF THE ACTION

6. This is a civil action for a declaratory judgment of noninfringement, invalidity and unenforceability of United States Patent No. 6,974,475 ("the '475 patent") due to inequitable conduct and prosecution history laches.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. §§ 1331 and 1338(a). As demonstrated by, *inter alia*, Wall Cardiovascular's filing of patent infringement claims based on the '475 patent against Abbott Laboratories and Abbott Cardiovascular Systems, Inc. (collectively, "Abbott") in connection with Abbot's drug-eluting XIENCE® stents, Case No. 2:08-cv-289 (E.D. Tex.), an actual and justiciable controversy exists between Boston Scientific

and Wall regarding the noninfringement, invalidity and unenforceability of the '475 patent with respect to Boston Scientific's PROMUS® brand drug-eluting stents.

8. In addition, as demonstrated by, *inter alia*, Wall Cardiovascular's filing of patent infringement claims based on the '475 patent against Boston Scientific in connection with Boston Scientific's drug-eluting TAXUS EXPRESS® stents, Case No. 2:07-cv-504 (E.D. Tex.), an actual and justiciable controversy exists between Boston Scientific and Wall regarding the noninfringement, invalidity and unenforceability of the '475 patent with respect to Boston Scientific's TAXUS LIBERTÉ® brand drug-eluting stents.

9. Wall Cardiovascular is subject to personal jurisdiction in this Court as evidenced by, *inter alia*, its sending of letters to Delaware corporations alleging infringement of the '475 patent, its negotiations with Delaware corporations regarding potential license terms for the '475 patent, and its filing of complaints against Delaware corporations alleging infringement of the '475 patent. This Court also has personal jurisdiction over defendant Wall Cardiovascular by virtue of, *inter alia*: (1) its presence in Delaware through its alter-ego Cardio Holdings; and (2) its systematic and continuous contacts with Delaware through its alter-ego Cardio Holdings.

10. This Court has personal jurisdiction over defendant Cardio Holdings by virtue of the fact that, *inter alia*, Cardio Holdings is a Delaware limited liability company.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

## RELEVANT FACTS

12. Upon information and belief, Abbott manufactures, sells and distributes drug-eluting stents under the trade name XIENCE®.

13. Pursuant to a Supply Agreement between Boston Scientific and Abbott, Abbott has provided and will provide Boston Scientific with XIENCE® stents, which Boston Scientific sells and will sell under the PROMUS® brand. Pursuant to the Supply Agreement, Boston Scientific also has a license to directly manufacture and sell PROMUS® stents if it so chooses. The XIENCE® stent and PROMUS® stent share the same structure and mechanism of action.

14. Boston Scientific manufactures, sells and distributes drug-eluting stents under the trade names TAXUS EXPRESS® and TAXUS LIBERTÉ®. The TAXUS EXPRESS® and TAXUS LIBERTÉ® stents are both metal stents covered with the same drug-polymer coating. While these two stents have different structures, they are believed to share the same mechanism of action.

15. Upon information and belief, on July 25, 2008, Wall Cardiovascular, under the direction of Cardio Holdings, filed a complaint against Abbott in the United States District Court for the Eastern District of Texas, alleging that Wall Cardiovascular holds all rights and interest in the '475 patent and that Abbott's XIENCE® stents infringe the '475 patent. In that complaint, Wall Cardiovascular alleged that it received all rights and interest in the '475 patent from Dr. W. Henry Wall via W.H. Wall Family Holdings GP, LLC and W.H. Wall Family Holdings, LLLP.

16. Upon information and belief, on November 16, 2007, Wall Cardiovascular, under the direction of Cardio Holdings, filed a complaint against Boston Scientific in the United States District for the Eastern District of Texas, alleging that Wall Cardiovascular holds all rights and

interest in the '475 patent and that Boston Scientific's drug-eluting TAXUS EXPRESS® stents infringe the '475 patent.

**COUNT I: DECLARATORY JUDGMENT OF NONINFRINGEMENT AS TO PROMUS STENTS**

17. Boston Scientific hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1-16 as though set forth herein in their entirety.

18. Upon information and belief, Wall Cardiovascular, under the direction of Cardio Holdings, has alleged that Abbott's XIENCE® stents — *i.e.*, the stents Boston Scientific sells as the PROMUS® stents and has a license to manufacture — infringe the '475 patent.

19. Boston Scientific's PROMUS® stents do not infringe any claim of the '475 patent, either directly, indirectly, literally or under the doctrine of equivalents.

20. Therefore, there exists an actual and justiciable controversy between Boston Scientific and Wall with respect to the noninfringement of the '475 patent by the PROMUS® stents.

21. A judicial declaration of noninfringement of the '475 patent by the PROMUS® stents is necessary and appropriate to resolve this controversy.

**COUNT II: DECLARATORY JUDGMENT OF NONINFRINGEMENT AS TO TAXUS LIBERTÉ STENTS**

22. Boston Scientific hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1-21 as though set forth herein in their entirety.

23. Upon information and belief, Wall Cardiovascular, under the direction of Cardio Holdings, has alleged that TAXUS EXPRESS® stents — *i.e.*, the stents Boston Scientific sells

that have the same drug-polymer coating as the TAXUS LIBERTÉ® stents — infringe the '475 patent.

24. Boston Scientific's TAXUS LIBERTÉ® stents also do not infringe any claim of the '475 patent, either directly, indirectly, literally or under the doctrine of equivalents.

25. Therefore, there exists an actual and justiciable controversy between Boston Scientific and Wall with respect to the noninfringement of the '475 patent by the TAXUS LIBERTÉ® stents.

26. A judicial declaration of noninfringement of the '475 patent by the TAXUS LIBERTÉ® stents is necessary and appropriate to resolve this controversy.

**COUNT III: DECLARATORY JUDGMENT OF INVALIDITY OF THE '475 PATENT**

27. Boston Scientific hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1-26 as though set forth herein in their entirety.

28. Upon information and belief, Wall alleges in its actions against Abbott and Boston Scientific that every claim of the '475 patent is valid.

29. Every claim of the '475 patent is invalid for failure to comply with one or more of the conditions for patentability specified in part II of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102 and/or 103.

30. Every claim of the '475 patent is additionally invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 112.

31. Therefore, there exists an actual and justiciable controversy between Boston Scientific and Wall with respect to the invalidity of the '475 patent.

32. A judicial declaration of invalidity of the '475 patent is necessary and appropriate to resolve this controversy.

**CLAIM IV: DECLARATORY JUDGMENT OF UNENFORCEABILITY**
**OF THE '475 PATENT DUE TO INEQUITABLE CONDUCT**

33. Boston Scientific hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1-32 as though set forth herein in their entirety.

34. Upon information and belief, Wall alleges that the '475 patent is enforceable.

35. The '475 patent is completely and permanently unenforceable due to inequitable conduct before the United States Patent And Trademark Office ("USPTO"). Numerous examples of this inequitable conduct are discussed below and Boston Scientific believes that additional examples are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

36. The '475 patent issued from U.S. Patent Application Serial No. 07/129,834 ("the '834 application"). The named inventor on the '834 application also filed U.S. Patent Application No. 10/293,122 ("the '122 application"). The '122 application is titled "Method Of Implanting A Sleeve In A Lumen" and was filed on November 13, 2002. The '122 application purports to be a divisional of the '834 application. As a result, the '122 application contains the same specification and drawings as '834 application.

37. As an example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable, as part of the filing and prosecution of the '834 application, which issued

as the '475 patent, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the material reference U.S. Patent No. 4,733,665 ("the '665 patent") to the USPTO. Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the '665 patent with the intent to deceive the USPTO into granting a patent on the '834 application.

38. Upon information and belief, a reasonable Patent Examiner would have considered the '665 patent highly material to the patentability of the claims of the '834 application. For example, the prior art '665 patent discloses a stent made from a mesh of wire material and having a biologically compatible coating.

39. Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO knew of the '665 patent and its materiality during prosecution of the '834 application and still failed to cite it to the USPTO. For example, in connection with prosecution of the '122 application, the '665 patent was disclosed in an Information Disclosure Citation. Moreover, on December 17, 2003, in connection with prosecution of the '122 application, the Patent Examiner listed the '665 patent as a cited reference in an office action. On January 21, 2004, while prosecuting the '122 application, the applicant filed a response to the December 17, 2003 office action.

40. Despite the overlap of subject matter in the '834 and '122 applications, and despite having knowledge that the '665 patent was relevant to the prosecution of the '834 application, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO still did not disclose the '665 patent to the USPTO during prosecution of the '834 application. This failure to disclose the highly material '665 patent was motivated by, and accomplished with,

the intent to deceive the USPTO into granting the patent that issued as the '475 patent asserted in this action.

41. As another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable, as part of the filing and prosecution of the '834 application, which issued as the '475 patent, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the material reference U.S. Patent No. 5,059,211 ("the '211 patent"). Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the '211 patent with the intent to deceive the USPTO into granting a patent on the '834 application.

42. Upon information and belief, a reasonable Patent Examiner would have considered the '211 patent highly material to the patentability of the claims of the '834 application. For example, the prior art '211 patent discloses a stent with walls having openings to facilitate tissue ingrowth and encapsulation of the stent.

43. Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO knew of the '211 patent and its materiality during prosecution of the '834 application and still failed to cite it to the USPTO. For example, during prosecution of the '122 application, the '211 patent was disclosed in an Information Disclosure Citation.

44. Despite the overlap of subject matter in the '834 and '122 applications, and despite having knowledge that the '211 patent was relevant to the prosecution of the '834 application, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO still did not disclose the '211 patent to the USPTO during prosecution of the '834 application. This failure to disclose the highly material '211 patent was motivated by, and accomplished with,

the intent to deceive the USPTO into granting the patent that issued as the '475 patent asserted in this action.

45. As another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable, as part of the filing and prosecution of the '834 application, which issued as the '475 patent, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the material reference U.S. Patent No. 4,776,337 ("the '337 patent"). Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the '337 patent with the intent to deceive the USPTO into granting a patent on the '834 application.

46. Upon information and belief, a reasonable Patent Examiner would have considered the '337 patent highly material to the patentability of the claims of the '834 application. For example, the prior art '337 patent discloses a stent made from a mesh of wire material and having a biologically compatible coating.

47. Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO knew of the '337 patent and its materiality during prosecution of the '834 application and still failed to cite it to the USPTO. For example, in connection with prosecution of the '122 application, patents issued to Palmaz, including the '665 patent and U.S. Patent No. 4,739,762 ("the '762 patent"), and a journal article authored by Palmaz were disclosed in an Information Disclosure Citation. Moreover, in connection with prosecution of the '834 patent, monographs authored by Palmaz and a district court opinion relating to the '762 patent were disclosed in an Information Disclosure Citation.

48. Upon information and belief, as demonstrated by the references relating to the Palmaz stent that were made of record during the prosecution of the '834 and '122 applications,

applicant was also aware of the '337 patent. Despite having knowledge that the '337 patent was relevant to the prosecution of the '834 application, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO still did not disclose the '337 patent to the USPTO during prosecution of the '834 application. This failure to disclose the highly material '337 patent was motivated by, and accomplished with, the intent to deceive the USPTO into granting the patent that issued as the '475 patent asserted in this action.

49. As another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable, as part of the filing and prosecution of the '834 application, which issued as the '475 patent, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose a material reference, the August 1987 Wall Street Journal article regarding the Palmaz stent ("the Wall Street Journal article"). Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO failed to disclose the Wall Street Journal article with the intent to deceive the USPTO into granting a patent on the '834 application.

50. Upon information and belief, a reasonable Patent Examiner would have considered the Wall Street Journal article highly material to the patentability of the claims of the '834 application, including, but not limited to, claims that were originally presented in the '122 application and later added to the '834 application. For example, the Wall Street Journal article discloses a method of using a stent made from a mesh tube to hold open a body vessel to a desired diameter.

51. Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO knew of the Wall Street Journal article and its materiality during prosecution of the '834 application and still failed to cite it to the USPTO. For

example, upon information and belief, the applicant provided the Wall Street Journal article to C.R. Bard, Inc. on August 21, 1987, several months prior to filing the '834 application. Despite having knowledge that the Wall Street Journal article was relevant to the prosecution of the '834 application, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO still did not disclose the article to the USPTO during prosecution of the '834 application. This failure to disclose the highly material Wall Street Journal article was motivated by, and accomplished with, the intent to deceive the USPTO into granting the patent that issued as the '475 patent asserted in this action.

52. As another example of the inequitable conduct before the USPTO that renders the '475 patent unenforceable, as part of the filing and prosecution of the '834 application, which issued as the '475 patent, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO made materially false statements with the intent to deceive the USPTO into granting a patent on that application.

53. On January 7, 1993, Interference No. 102,994 was declared between the '834 application and U.S. Patent No. 4,740,207 to Kreamer ("the '207 patent"). This interference was provoked by the applicant in a September 20, 1988 response to an office action. On June 28, 1995, the Board Of Patent Appeals And Interferences ("the BPAI") ruled against applicant. On February 19, 1997, the U.S. Court Of Appeals For The Federal Circuit dismissed the applicant's appeal of this ruling. This dismissal affirmed the rejection of some, but not all, of the pending claims of the '834 application.

54. On August 20, 2004, the USPTO issued an office action resuming *ex parte* prosecution of the claims of the '834 application. On September 20, 2004, the '834 application was deemed abandoned by the Patent Examiner due to the applicant's failure to respond to the

August 20, 2004 office action. On February 14, 2005, the applicant filed a Petition For Revival and a Request To Withdraw And Re-Mail Office Action Dated August 20, 2004. In its Request To Withdraw And Re-Mail Office Action Dated August 20, 2004, the applicant stated that: "The Office Action that was issued by the Office was the first Office Action issued in this file for several years. Applicant and his attorney were not aware of a likelihood that an Office Action would be issued in this application file and did not anticipate that an Office Action would be issued."

55. Upon information and belief, contrary to this representation to the USPTO, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO were aware that the '834 application contained claims that were still active after the February 19, 1997 Federal Circuit decision in connection with Interference No. 102,994. For example, during prosecution of U.S. Patent Application Serial No. 08/667,604 ("the '604 application"), the applicant filed a terminal disclaimer stating that "[t]he applicant disclaims the terminal portion of any patent that may issue to the above captioned U.S. patent application that extends beyond the expiration of any patent that may issue to U.S. patent application No. 07/129,834." It is apparent from at least this statement that the applicant knew as of August 12, 1999 that certain claims of the '834 application were still pending.

56. Moreover, in a March 17, 2005 communication with the USPTO in connection with the '834 application, the applicant cited MPEP § 1216.01, noting that for "an application received back from the Court of Appeals of the Federal Circuit, when some claims have been allowed," "the proceedings are considered terminated only as to any claims which still stand rejected." Moreover, upon information and belief, between February 19, 1997 and February 14, 2005, the applicant actively prosecuted continuations, continuations-in-part and/or divisionals of

the '834 application, including the '122 application and U.S. Patent Application Serial No. 08/578,504 and the '604 application, none of which would have been possible if there were not still claims pending in the '834 application. Furthermore, on December 7, 1993, Dr. William Henry Wall, the sole named inventor on the '834 application, testified in a deposition in connection with Interference No. 102,994 that he was "very familiar with the patent process."

57. Upon information and belief, a reasonable Patent Examiner would have considered the fact that the applicant was aware that the '834 application contained claims that were still active after the February 19, 1997 Federal Circuit decision in connection with Interference No. 102,994 to be material to the patentability of the claims of the '834 application. For example, a reasonable Patent Examiner would have considered this awareness material in deciding whether to grant the applicant's February 14, 2005 Petition For Revival and Request To Withdraw And Re-Mail Office Action Dated August 20, 2004.

58. Upon information and belief, the named inventor and/or others with a duty of candor and good faith in dealing with the USPTO knew that the '834 application contained claims that were still active after the February 19, 1997 Federal Circuit decision in connection with Interference No. 102,994, knew that this fact was material and intentionally misled the USPTO into believing that the applicant had no such awareness in order to deceive the USPTO into granting a patent on that application.

59. Therefore, there exists an actual and justiciable controversy between Boston Scientific and Wall with respect to the unenforceability of the '475 patent due to inequitable conduct.

60. A judicial declaration of unenforceability of the '475 patent due to inequitable conduct is necessary and appropriate to resolve this controversy.

**CLAIM V: DECLARATORY JUDGMENT**
**OF UNENFORCEABILITY DUE TO PROSECUTION HISTORY LACHES**

61. Boston Scientific hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1-60 as though set forth herein in their entirety.

62. Upon information and belief, Wall alleges that the '475 patent is enforceable.

63. The '475 patent is completely and permanently unenforceable due to prosecution history laches.

64. The '834 application was filed on December 8, 1987. The '834 application issued as the '475 patent over 18 years later, on December 13, 2005. Between December 8, 1987 and December 13, 2005, there were numerous developments in the stent field, including the development of the PROMUS® and TAXUS LIBERTÉ® stents. Upon information and belief, representatives of Wall and/or its corporate predecessors and/or Dr. William Henry Wall were aware of these developments throughout the prosecution of the '834 application.

65. On January 7, 1993, Interference No. 102,994 was declared between the '834 application and the '207 patent. This interference was provoked by the applicant in a September 20, 1988 office action response. On June 28, 1995, the BPAI ruled against the applicant. On February 19, 1997, the U.S. Court Of Appeals For The Federal Circuit dismissed applicant's appeal of this ruling. On August 20, 2004, the USPTO issued an office action resuming *ex parte* prosecution of the claims that were not subject to the interference. The applicant did not respond to this office action until February 14, 2005.

66. Pursuant to MPEP §§ 2308 and 203.08, the burden was on the applicant to initiate *ex parte* prosecution after the Federal Circuit's February 19, 1997 dismissal of the applicant's appeal.

67. Between February 19, 1997 and February 14, 2005, the applicant could have continued prosecuting the claims that were not subject to Interference No. 102,994, but delayed doing so. Upon information and belief, the applicant was aware that it could have continued prosecuting these claims and delayed doing so unreasonably and with the bad-faith intent to keep the application pending and reap the benefits of that status, including the ability to use the application as a priority basis for other applications and to claim a longer term on any resulting patent, without any scrutiny by the USPTO.

68. For example, in a March 17, 2005 communication with the USPTO in connection with the '834 application, the applicant cited MPEP § 1216.01 in noting that, for "an application received back from the Court of Appeals of the Federal Circuit, when some claims have been allowed," "the proceedings are considered terminated only as to any claims which still stand rejected."

69. Moreover, upon information and belief, between February 19, 1997 and February 14, 2005, the applicant actively prosecuted continuations, continuations-in-part and/or divisionals of the '834 application, including the '122 application and U.S. Patent Application Serial Nos. 08/578,504 and 08/667,604.

70. Despite having this knowledge, between February 19, 1997 and February 14, 2005, no action was taken by the applicant with respect to the continued prosecution of the '834 application. For example, the applicant did not file any status inquiries, despite having filed such status inquiries in connection with the '834 application on at least four prior occasions: May 12, 1989; April 23, 1990; November 14, 1990; and July 11, 1991.

71. Moreover, on January 25, 2005, the claims from the co-pending '122 application were allowed by the USPTO. Rather than permit the claims from the '122 application to issue,

however, the applicant further protracted prosecution of these claims by requesting that they be combined with the still pending claims of the '834 application. By combining the claims of the '122 application with the claims of the '834 application, the applicant confirmed its awareness that the '834 application was still a "live" file in the USPTO and effectively and improperly extended the patent term of the claims that previously were part of the '122 application. For example, any claims of a patent issuing from the '122 application would have expired on December 8, 2007.

72. The unreasonable and bad-faith delay during prosecution of the '475 patent resulted in material prejudice and injury to Boston Scientific. For example, Boston Scientific continued to invest significant time and money in testing, researching and developing existing and new and improved stent products during this delay.

73. Therefore, there exists an actual and justiciable controversy between Boston Scientific and Wall with respect to the unenforceability of the '475 patent due to prosecution history laches.

74. A judicial declaration of unenforceability of the '475 patent due to prosecution history laches is necessary and appropriate to resolve this controversy.

## PRAYER FOR RELIEF

**WHEREFORE**, Boston Scientific prays for entry of judgment:

A. Declaring that Boston Scientific's PROMUS® stents do not infringe the '475 patent;

B. Declaring that Boston Scientific's LIBERTÉ® stents do not infringe the '475 patent;

C. Declaring that the '475 patent is invalid;

D. Declaring that the '475 patent is unenforceable due to inequitable conduct;

E. Declaring that the '475 patent is unenforceable due to prosecution history laches;

F. Enjoining Wall Cardiovascular, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise from directly or indirectly charging infringement, or instituting any further action for infringement of the '475 patent, against Boston Scientific and/or any of its affiliates, customers, licensees or potential customers or licensees with respect to the PROMUS® and LIBERTÉ® stents;

G. Enjoining Cardio Holdings, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise from directly or indirectly charging infringement, or instituting any further action for infringement of the '475 patent, against Boston Scientific and/or any of its affiliates, customers, licensees or potential customers or licensees with respect to the PROMUS® and LIBERTÉ® stents;

H. Declaring this case to be exceptional within the meaning of 35 U.S.C. § 285 and awarding Boston Scientific the attorney fees, costs, and expenses that it incurs in connection with this action; and

I. Awarding Boston Scientific such other and further relief as the Court deems just and proper.

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

*/s/ John W. Shaw*
Josy W. Ingersoll (I.D. #1088)
jingersoll@ycst.com
John W. Shaw (I.D. #3362)
jshaw@ycst.com
Adam W. Poff (I.D. #3990)
apoff@ycst.com
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Plaintiffs*
*Boston Scientific Corporation*
*and Boston Scientific Scimed, Inc.*

*Of Counsel*:

John M. Desmarais
jdesmarais@kirkland.com
Peter J. Armenio
parmenio@kirkland.com
Young J. Park
ypark@kikrland.com
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

Dated: January 2, 2009

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on January 2, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Francis DiGiovanni, Esquire [fdigiovanni@cblh.com]
Chad S.C. Stover, Esquire
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE 19899

I further certify that on January 2, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

***By E-Mail***

Stephen D. Susman, Esquire [ssusman@susmangodfrey.com]
Max L. Tribble, Jr., Esquire [mtribble@susmangodfrey.com]
Vineet Bhatia, Esquire [vbhatia@susmangodfrey.com]
Stephen Schlather, Esquire [sschlather@susmangodfrey.com]
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096

Stephen Shackelford, Esquire [sshackelford@susmangodfrey.com]
Susman Godfrey L.L.P.
901 Main Street, Suite 5100
Dallas, TX 75202-3775

Michael F. Heim, Esquire [mheim@hpcllp.com]
Russell Chorush, Esquire [rchorush@hpcllp.com]
Heim, Payne & Chorush, L.L.P.
600 Travis Street, Suite 6710
Houston, TX 77002-2912

Franklin Jones, Jr., Esquire [maizieh@millerfirm.com]
Jones and Jones, Inc., P.C.
201 West Houston Street
P.O. Drawer 1249
Marshall, TX 75671

Otis Carroll, Esquire [otiscarroll@icklaw.com]
Ireland, Carroll & Kelley P.C.
6101 South Broadway, Suite 500
Tyler, TX 75703

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ John W. Shaw*

Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
John W. Shaw (#3362) [jshaw@ycst.com]
Adam W. Poff (#3990) [apoff@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
Attorneys for Plaintiffs