## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC., )<br><br>Plaintiffs, )<br><br>v. )<br><br>WALL CARDIOVASCULAR TECHNOLOGIES LLC and CARDIO HOLDINGS LLC, )<br><br>Defendants. ) | Civil Action No. 08-489-SLR<br><br>REDACTED |

---

### BSC'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Josy W. Ingersoll (I.D. #1088)
John W. Shaw (I.D. # 3362)
Adam W. Poff (I.D. #3990)
YOUNG CONAWAY STARGATT
    & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Plaintiffs*
*Boston Scientific Corporation*
*and Boston Scientific Scimed, Inc.*

*Of Counsel:*

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ..................................................2

STATEMENT OF FACTS .....................................................................................6

    I.     The Parties ...........................................................................................6

    II.    Subject Matter Of The '475 Patent.........................................................8

    III.   WCT's Prior Contacts With BSC...........................................................9

    IV.   BSC Launched New Drug-Eluting Stents In 2008 ................................10

ARGUMENT.....................................................................................................12

    I.     WCT's Managing Member, Cardio Holdings, Is A Delaware Company ..............12

    II.    WCT Is Subject To This Court's Jurisdiction Under Delaware's Long-Arm
           Statute ...............................................................................................13
           A.    Legal Standard ..............................................................................13
           B.    WCT Has Had "Minimum Contacts" With Delaware ...............................14

    III.   WCT Is The Alter-Ego Of Cardio Holdings...........................................20
           A.    Legal Standard ..............................................................................20
           B.    Cardio Holdings Controls WCT .......................................................21
           C.    Cardio Holdings' Forum Shopping Tactics Are A "Form Of Fraud,
                Injustice Or Inequity" Against BSC..........................................................23

    IV.   The First-to-File Rule Does Not Apply To This Action..........................24
           A.    This Action Involves Different Products Than The Texas Action ............24
           B.    The First-To-File Rule Does Not Apply Because This Action Falls
                Under One Of The Many Exceptions To The Rule ....................................25

CONCLUSION....................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Abbot Labs. v. Johnson and Johnson, Inc.*,
    524 F. Supp. 2d 553 (D. Del. 2007) ................................................................................ 24

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995) ............................................................................... 14, 15

*Boone v. Oy Partek Ab*,
    724 A.2d 1150 (Del. Super. Ct. 1997) ............................................................................ 14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .......................................................................................................... 17

*Capitol Records Inc. v. Optical Recording Corp.*,
    810 F. Supp. 1350 (S.D.N.Y. 1992) ............................................................................... 27

*Carden v. Arkoma Assocs.*,
    494 U.S. 185 (1990) .......................................................................................................... 12

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*,
    142 F.3d 1266 (Fed. Cir. 1998) .............................................................................. 15, 16

*Donatelli v. Nat'l Hockey League*,
    893 F.2d 459 (1st Cir. 1990) ........................................................................................... 12

*E.E.O.C. v. Univ. of Pa.*,
    850 F.2d 969 (2d Cir. 1988) ...................................................................................... 24, 25

*E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*,
    197 F.R.D. 112 (D. Del. 2000) ........................................................................................ 20

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
    No. 03-612-KAJ, 2004 WL 2346137 (D. Del. Sept. 13, 2004) ....................................... 14

*Foster v. Hallco Mfg. Co., Inc.*,
    947 F.2d 469 (Fed. Cir. 1991) ........................................................................................ 24

*Genentech, Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ........................................................................................ 25

*Goforit Entm't LLC v. Digimedia.com L.P.*,
    513 F. Supp. 2d 1325 (M.D. Fla. 2007) .......................................................................... 13

*Hildebrand v. Steck Mfg. Co.*,
    279 F.3d 1351 (Fed. Cir. 2002) ...................................................................................... 14

*Inamed Corp. v. Kuzmak,*
      249 F.3d 1356 (Fed. Cir. 2001)............................................................... 15

*Int'l Shoe Co. v. Washington,*
      326 U.S. 310 (1945).............................................................................. 14

*LG Elecs., Inc., v. Hitachi, Ltd.,*
      No. 9:07-CV-138, 2007 WL 4411035 (E.D. Tex. Dec. 3, 2007) ..................................... 28

*Liban v. Churchey Group II, L.L.C.,*
      305 F. Supp. 2d 136 n.2 (D.D.C. 2004) ............................................................ 12

*Magee v. Essex-Tec Corp.,*
      704 F. Supp. 543 (D. Del. 1988) ................................................................... 17

*Medtronic AVE, Inc. v. Cordis Corp.,*
      2:02-CV-73-DF (E.D. Tex. Mar. 19, 2003) .................................................. 27, 28

*Power Integrations, Inc. v. BCD Semiconductor Corp.,*
      547 F. Supp. 2d 365, (D. Del. 2008).................................................... 13, 14

*Reach & Assocs., P.C. v. Dencer,*
      269 F. Supp. 2d 497 (D. Del. 2003) ............................................................... 21

*Red Wing Shoe Company, Inc. v. Hockerson-Halberstadt, Inc.,*
      148 F.3d 1355 (Fed. Cir. 1998) ......................................................... 19, 20

*U.S. v. Golden Acres, Inc.,*
      702 F. Supp. 1097 (D. Del. 1988)...................................................... 21, 22

*Viam Corp. v. Iowa Export-Import Trading Co.,*
      84 F.3d 424 (Fed. Cir. 1996)..................................................................... 14

*Wilton v. Seven Falls Co.,*
      515 U.S. 277 (1995)............................................................................... 25

*World-Wide Volkswagen Corp. v. Woodson,*
      444 U.S. 286 (1980)............................................................................... 15

**Statutes**

10 Del. C. § 3104(c)....................................................................... 14, 18

Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively,
"BSC") respectfully submit this opposition to Wall Cardiovascular Technologies LLC's ("WCT")
and Cardio Holdings LLC's ("Cardio Holdings") Motion to Dismiss (D.I. 22).

## NATURE AND STAGE OF THE PROCEEDINGS

On August 6, 2008, BSC filed its original Complaint in this action, which sought a
declaration that the Promus stent does not infringe any valid and enforceable claim of U.S.
Patent No. 6,974,475 ("the '475 patent") to Dr. W. Henry Wall.  (D.I. 1)  On January 2, 2009,
BSC filed an Amended Complaint to include the Taxus Liberté stent, which received FDA
approval in November 2008, as another BSC stent that does not infringe any valid and
enforceable claim of the '475 patent.  (D.I. 16)  Based on the limited jurisdictional discovery that
WCT had provided in this case, and despite BSC's requests for broader discovery, BSC included
a Delaware limited liability company, Cardio Holdings, as a defendant in its Amended
Complaint.[1]  On February 27, 2009, WCT and Cardio Holdings filed a motion to dismiss for lack
BSC's Amended Complaint.

In multiple Complaints and Amended Complaints spanning over 8 months, WCT
separately filed suit against BSC, Cordis, Medtronic and Abbott in the District Court for the
Eastern District of Texas ("the Texas Action") for infringement of the '475 patent.  Given WCT's

---

[1]   WCT overstates the extent of its cooperation with BSC regarding jurisdictional discovery.  (D.I. 22, at p. 1)  For
example, WCT refused to provide any written or documentary discovery relating solely to Cardio Holdings,
WCT's managing member and a **Delaware** company.  Moreover, despite broader discovery requests from BSC,
WCT only produced 105 pages of documents in this action, which consisted almost entirely of:  (1) the LLC
Agreement; (2) patent assignment agreements between WCT and W.H. Wall Family Holdings LLLP ("Wall
Family Holdings"); and (3) minutes from a WCT Board meeting.  WCT's responses to BSC's discovery requests
are attached as Exhibits 4 and 5 (all exhibits referenced herein are attached to the Declaration of Young J. Park).

WCT attempts to justify its refusal to provide discovery relating to Cardio Holdings by arguing that BSC filed
an Amended Complaint.  (D.I. 22, at 1-2)  This is a non-sequitur.  WCT's withholding of discovery relating to
Cardio Holdings is gamesmanship, especially considering its earlier offer to produce such discovery.  Based on
its relation to WCT, discovery relating to Cardio Holdings is plainly relevant and should have been provided.

delays, the parties are just beginning the discovery process in the Texas Action, and trial is not scheduled until April 2011.  (Ex. 1, Docket Control Order in Civil Action No. 07-504-TJW)

## SUMMARY OF ARGUMENT

1.      WCT is a shell and a sham.  It was formed in Texas solely for purposes of forum shopping.  The actual controlling entity, Cardio Holdings, is a company organized under Delaware law, and is identified by WCT as its "managing member."  Nonetheless, Defendants maintain that this Court somehow does not have personal jurisdiction over WCT.  Allowing a Delaware company to engage in such forum shopping works "a fraud, injustice, or inequity" on its litigation targets, this Court, and the State of Delaware, which has a right to adjudicate the conduct of its corporate citizens regardless of the corporate shell games they may play.

2.      The Federal Circuit has held on numerous occasions that purposeful actions, such as threatening companies with litigation and engaging them in licensing negotiations, subject the patentee to jurisdiction in the targeted company's home state.  Notwithstanding Cardio Holdings' status as a Delaware company and managing member of WCT, WCT is also subject to this Court's personal jurisdiction based on its interactions with Delaware entities regarding the '475 patent, including BSC.  For example, WCT sued BSC for infringement of the '475 patent in connection with BSC's Taxus Express stent, which is the epitome of a litigation threat.  WCT's predecessor-in-interest Dr. W. Henry Wall also initiated and engaged in several negotiations with BSC in hopes of licensing the '475 patent, including meetings with BSC on at least two different occasions.  When negotiations between BSC and Dr. Wall fell through, Dr. Wall attempted to re-engage BSC by sending another letter.

3.      Further requiring both WCT and Cardio Holdings to litigate this action in Delaware,  WCT appears to be an alter ego of Delaware entity Cardio Holdings.  In WCT's Certificate Of Formation, Cardio Holdings is identified as the single governing member.  (Ex. 4,

3

Certificate Of Formation Of WCT)  Under WCT's LLC Agreement, Cardio Holdings is

identified as the sole "managing member." (D.I. 23, Ex. 1 at p. 1)  As the "managing member,"

Cardio Holdings has "the authority, power and discretion to manage and control the day-to-day

business, affairs and properties of [WCT]."  For example, Cardio Holdings manages outside

counsel so that WCT can carry out its stated business purpose of asserting the '475 patent against

third parties.  Tellingly, when asked about the sole business purpose of Cardio Holdings, WCT's

managing director responded, "Cardio Holdings is a member of WCT." (Ex. 5, Marino

Deposition Transcript ("Marino Dep. Tr.") at 26:4-13)

      4.      Further confirming the alter-ego relationship between WCT and Delaware entity

Cardio Holdings, and this Court's personal jurisdiction over WCT, intertwining financial

transactions have occurred, are occurring, and will continue to occur in the future between WCT

and Cardio Holdings.

REDACTED

      5.      WCT cannot rely on the first-to-file rule to support its motion to dismiss.  WCT's

original and amended complaints in the Texas Action did not contain a claim of patent

infringement against either the Promus or Taxus Liberté stent. (Ex. 6, WCT's Original

Complaint; Ex. 7, WCT's First Amended Complaint; Ex. 8, WCT's Second Amended Complaint)

Nor could it — neither one of those stents was approved for sale in the U.S. at the time WCT

filed its complaints and WCT's asserted claims are method claims that require a physician in the

U.S. to perform the allegedly infringing acts.  Nor can the boilerplate language in WCT's

complaints, "Taxus products, and other products and services related to coronary, carotid and

peripheral stents," prospectively include the Promus and Taxus Liberté stents.

      6.      In any event, judicial economy and public interest favor denying WCT's motion to

dismiss under the first-to-file rule.  Aware of the extensive knowledge that this Court has

regarding cardiovascular stents, and despite the fact that Cardio Holdings is a Delaware

company, WCT was purposefully organized in Texas.  Courts have held that such forum-

shopping provides a basis to depart from the first-to-file rule.  Moreover, given this Court's

extensive experience in this case's subject matter, *i.e.*, whether Dr. Wall and not Dr. Julio Palmaz

was the first to invent balloon-expandable stents, it would promote judicial economy to leave this

action in this Court.  Any risk that two courts will adjudicate the same legal issues is mitigated

by the fact that BSC intends to file a motion to transfer the Texas action to this Court via the

Judicial Panel On Multidistrict Litigation if the Court denies Defendants' motions.

## STATEMENT OF FACTS

### I.    The Parties

BSC's contacts with the State of Delaware are substantial.  BSC was organized under

Delaware law in 1979.  BSC has sold millions of dollars worth of cardiovascular stents to

hospitals in Delaware.  BSC also employs Delaware citizens, *e.g.*, sales representatives, and pays

various Delaware taxes for doing business in the State.  Further, as both plaintiff and defendant,

BSC has litigated numerous cases in this Court involving patents and cardiovascular stents.

Defendant Cardio Holdings is a limited liability company organized under Delaware law.

Defendant WCT is a limited liability company organized under Texas law.  WCT was formed

under an LLC Agreement between Cardio Holdings and Wall Family Holdings.  (D.I. 23, Ex. 1)

Cardio Holdings and Wall Family Holdings are the only members of WCT.  (Ex. 5, Marino Dep.

Tr. at 19:5-13)

Cardio Holdings is the "Managing Member" of WCT.  (D.I. 23, Ex. 1 at p. 1)  As the

Managing Member, Cardio Holdings has authority to manage and control the "day-to-day,

business, affairs and properties of [WCT]." (*Id.* at § 6.2)  Such authority includes "making all

decisions regarding [day-to-day matters] and [performing] any and all other acts or activities

customary or incident to the management of [WCT's] business in the ordinary course, including

the execution and delivery of documents, agreements or instruments by or on behalf of the

company."  (*Id.*)

Under the LLC Agreement, Cardio Holdings also has the right to appoint as "managing

director" a natural person that will represent the interests of Cardio Holdings on WCT's Board of

Directors.  (*Id.* at § 6.1(c))  Cardio Holdings appointed William A. Marino for that position.  Mr.

Marino is also a director of Cardio Holdings.  (D.I. 23, at ¶ 2)  In addition to being a director of

both WCT and Cardio Holdings, Mr. Marino is the CEO of Saxon Innovations, a company that

acquires patent rights and seeks to license those rights to third parties. (Ex. 5, Marino Dep. Tr. at 12:4-10)  Mr. Marino is also a Partner and General Counsel of Altitude Capital Partners, a private equity fund that, *inter alia*, provides funding for companies that acquire and assert patent rights against third parties. (Ex. 9, Altitude Capital Partners Webpage, "Firm Overview") Altitude Capital Partners is a member of Cardio Holdings. (Ex. 5, Marino Dep. Tr. at 21:5-10)

As WCT's managing director, Mr. Marino performs the day-to-day duties that allow WCT to fulfill its stated business purpose, *e.g.*, assert the '475 patent against third parties such as BSC. For example, Mr. Marino "monitors" the work of WCT's outside counsel. (Ex. 5, Marino Dep. Tr. at 22:13 to 23:4)  Mr. Marino also reviews legal invoices for WCT and approves them. (*Id.* at 40:18-41:7)  According to Mr. Marino, he operates "functionally" as WCT's in-house counsel. (*Id.* at 40:14-17)  Mr. Marino also informs Wall Family Holdings of litigation notices and motions. (*Id.* at 22:13 to 23:4)

Cardio Holdings is the sole source of capital for WCT. (Ex. 5, Marino Dep. Tr. at 41:11-13)  To date, WCT has not generated any revenues on its own. (*Id.* at 27:2-5)  For example, WCT has been unsuccessful in licensing any of its patent rights. (*Id.* at 26:1-3)  Cardio Holdings funds all of WCT's "ongoing operations," which includes payment of legal bills incurred in the assertion of the '475 patent. (*Id.* at 32:5-18)  Of course, "ongoing operations" also includes other expenses such as paying for WCT's employee and the rent. (*Id.*)



REDACTED

REDACTED

## II.    Subject Matter Of The '475 Patent

The '475 patent discloses and contains claims that relate to a method of delivering an expandable stent with a coating.  Claim 30, the independent claim asserted against BSC's Taxus Express stent in the Texas Action, is provided below:

> A method of placement of a sleeve into an affected lumen of a human body following angioplasty for preventing re-stenosis of the affected lumen and maintaining at least a minimum opening in the lumen comprising:
> providing a sleeve formed in a mesh and a coating applied to said mesh and defining a plurality of openings throughout the mesh to allow tissue to grow there through,
> providing a catheter,
> mounting the sleeve in a radially collapsed position on the catheter,
> inserting the catheter with the collapsed sleeve mounted thereon into a lumen of the body,
> carrying the sleeve in its collapsed position with the catheter along the length of the lumen to a position in the lumen where the minimum opening in the lumen is to be maintained,
> radially expanding the sleeve in the position of the lumen where the minimum opening in the lumen is to be maintained,
> radially expanding the lumen in response to the radial expansion of the sleeve,
> withdrawing the catheter from the sleeve and from the lumen,
> promoting epithelialization of the lumen about the sleeve and its openings for incorporating the sleeve into the lumen, and
> retarding re-stenosis of the lumen with the sleeve.

(*See, e.g.*, Ex. 10, the '475 patent, Claim 30)  According to WCT in the Texas Action, BSC's Taxus Express stent infringes Claims 30, 31 and 33 of the '475 patent.  (Ex. 11, WCT's Preliminary Infringement Contentions)  BSC intends to show that the asserted claims, as construed by WCT, are invalid based on, *inter alia*, patents issued to Dr. Palmaz.  (Ex. 12, BSC's Invalidity Contentions)  To rebut BSC's invalidity defenses, WCT is expected to argue that, *inter*

*alia*, Dr. Wall somehow invented the subject matter of the '475 patent, *i.e.*, method of delivering an expandable stent with a coating, before Dr. Palmaz.

This Court is uniquely qualified to preside over the resolution of that issue, which BSC will likely present by way of a summary judgment motion. In adjudicating numerous cases relating to cardiovascular stents, this Court has become familiar with BSC, the products accused of infringement and the legal arguments relating to stent technology. This Court is also familiar with the work of Dr. Palmaz, the named inventor on the primary prior art references in this case. For example, Dr. Palmaz has given testimony regarding his conception and development of balloon-expandable stents on multiple occasions in this Court.

### III.    WCT's Prior Contacts With BSC

On or about February 2005, WCT's predecessor-in-interest Dr. Wall sent BSC a letter in hopes of licensing patent rights. (Ex. 3, at Schedule 2.7(i)) After receiving this letter, BSC representatives met with Dr. Wall and his representatives to discuss the possibility of taking a license. For example, on or about May 2005, BSC representatives met with George M. Thomas, an attorney that prosecuted Dr. Wall's patents, in Georgia. (Ex. 13, Letter From Thomas To Dohmen) On a separate occasion, BSC representatives met with Steve Gorlin, another agent for Dr. Wall, in Massachusetts.

Based on those meetings, on or about September 2005, BSC sent Dr. Wall proposed terms for the assignment of his patent rights, which would have included the later-issuing '475 patent. (Ex. 14, Proposed Terms Of Agreement For Patent Assignment)



Dr. Wall did not accept BSC's proposal and the parties ended their negotiations.

On or about February 2006, Dr. Wall attempted to restart negotiations relating to the '475 patent, but BSC declined. (Ex. 15, Letter From Velis To Godshall)  After remaining silent for nearly two years, in November 2007, WCT filed suit in the District Court for the Eastern District of Texas alleging, *inter alia*, that BSC's Taxus Express stent infringes the '475 patent. (Ex. 6)

## IV.    BSC Launched New Drug-Eluting Stents In 2008

Since WCT filed its original and amended complaints in the Texas Action, BSC has launched two new drug-eluting stents in the U.S., the Promus and Taxus Liberté stents. Taxus Express, which was launched in the U.S. in March 2004, was BSC's first drug-eluting stent. Drug-eluting stents have revolutionized the way physicians treat patients suffering from blockages in coronary arteries. The road leading to drug-eluting stents, however, has been long and arduous. While Cordis was able to launch its Cypher stent in 2003 and BSC was able to launch its Taxus Express stent in 2004, no other manufacturer was able to obtain FDA approval to make and sell a drug-eluting stent in the U.S. until 2008. Medtronic, Abbott (which took over Guidant's stent business) and Conor Medsystems all encountered significant difficulty in designing an effective drug-polymer combination for their stents.

Prior to the introduction of drug-eluting stents, patients suffering from a cardiovascular narrowing or blockage were treated mainly with bare-metal stents. The Achilles' heel of bare-metal stents, however, was their rate of restenosis (re-blockage of the treated vessel). Drug-eluting stents significantly reduced the rate of restenosis compared to bare-metal stents by delivering to the blood vessel a drug that inhibits restenosis.

Taxus Express, which elutes the drug paclitaxel, has been a huge commercial success since its launch and has helped hundreds of thousands of patients worldwide suffering from coronary artery disease. It was the best selling stent for many years. A picture of Taxus Express is shown below:

10



Copyright © 2004 Boston Scientific Corporation. All rights reserved.

**BSC's Taxus Express**

In July 2008, BSC launched the Promus stent for sale in the U.S.  As shown in the picture below, Promus has a different stent architecture than Taxus Express.  Promus is also coated with a different drug-polymer coating than Taxus Express.  For example, Promus inhibits restenosis by eluting the drug everolimus, as opposed to paclitaxel.



**BSC's Promus**

Demonstrating BSC's commitment to providing the best patient care, BSC has also launched its next-generation drug-eluting stent for sale in the U.S., the Taxus Liberté stent. While the stent has been made in the U.S. for sales abroad since 2005, the Taxus Liberté stent only received approval for sale in the U.S. in November 2008.  Both Taxus Express and Taxus Liberté elute the drug paclitaxel.  As shown in the picture below, however, Taxus Express and Taxus Liberté have very different stent architectures.  Indeed, Taxus Liberté was the subject of a separate application to the U.S. FDA for approval than BSC's other drug-eluting stents.

11



**BSC's Taxus Liberte**

## ARGUMENT

**I.     WCT's Managing Member, Cardio Holdings, Is A Delaware Company**

This Court has personal jurisdiction over WCT because its managing member, Cardio Holdings, is a Delaware limited liability company. According to the District Court for the District of Columbia, a limited liability company is subject to personal jurisdiction in any state where its "principals" reside. *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 141 n.2 (D.D.C. 2004) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 190 (1990)). This finding is consistent with the "general rule" relating to partnerships, where "jurisdiction over a partner confers jurisdiction over the partnership." *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 466 (1st Cir. 1990).

WCT does not, and cannot, dispute that Cardio Holdings is a "principal" of WCT and that Cardio Holdings is subject to personal jurisdiction in Delaware. The relevance of Cardio Holdings' status as a Delaware company looms even larger given its dominion over WCT. As discussed above, Cardio Holdings, through its appointee, Mr. Marino, controls all of WCT's day-to-day activities, which consists almost entirely of litigating the Wall patents against third parties. For example, Mr. Marino manages and approves invoices from outside counsel for WCT. Cardio Holdings also finances all of WCT's operations, including its purchase of the Wall

patents and payment of employees, the rent and outside counsel. Given this level of involvement, Cardio Holdings' status as a Delaware company subjects WCT to personal jurisdiction in Delaware.

Allowing Cardio Holdings to avoid the consequences of being a Delaware company by organizing a shell company in Texas, *i.e.*, WCT, would condone and promote forum shopping. Indeed, absent such forum shopping, there is no reason for WCT to exist.

To the extent that WCT attempts to argue that the residence of a limited partner is not sufficient to confer jurisdiction upon the entire partnership, its cited cases are distinguishable. For example, in *Goforit Entm't LLC v. Digimedia.com L.P.*, the court found no personal jurisdiction because "[a] limited partnership does not necessarily derive any benefit from the forum merely by virtue of having ***a limited partner there*** . . . ." 513 F. Supp. 2d 1325, 1331 (M.D. Fla. 2007) (emphasis added). Cardio Holdings, however, is not a limited or passive investor in WCT. Cardio Holdings is ***the managing member*** of WCT, which, as discussed above, entails significant decision making for the company, *e.g.*, managing outside counsel.



## II.   WCT Is Subject To This Court's Jurisdiction Under Delaware's Long-Arm Statute

A.   Legal Standard

When personal jurisdiction over a defendant is challenged by a motion to dismiss, the plaintiff bears the burden of demonstrating the basis for jurisdiction. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). To meet this burden, the plaintiff need only make a *prima facie* showing that personal jurisdiction is conferred by statute. *Id.* All factual inferences "must be viewed in the light most favorable to the plaintiff." *Id.*

13

Federal Circuit law governs personal jurisdiction issues in patent infringement cases. *See*

*Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). To decide whether

personal jurisdiction exists over a non-resident defendant, "the court must determine whether

jurisdiction lies under both the applicable state long-arm statute and the Due Process Clause of

the Federal Constitution." *See Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427

(Fed. Cir. 1996).

Delaware's long-arm statute has been construed "liberally so as to provide jurisdiction to

the maximum extent possible. In fact, the only limit placed on [the statute] is that it remain

within the constraints of the Due Process Clause."[2] *Power Integrations*, 547 F. Supp. 2d at 370

(internal quotations omitted) (*quoting Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157 (Del. Super.

Ct. 1997)). When the limits of the long-arm statute and due process are coextensive, the "sole

inquiry [] becomes whether the trial court can exercise personal jurisdiction . . . consistent with

due process." *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995).

B.    WCT Has Had "Minimum Contacts" With Delaware

The Due Process Clause requires "minimum contacts" between the non-resident

defendant and the forum state "such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945) (citations omitted). Defendant's contacts must be of a nature that would cause it to

reasonably foresee that it might be "haled into court" in the forum as a result of its conduct. *See*

---

[2]    In arguing that the Delaware Supreme Court has not collapsed the analysis of Delaware's long-arm statute into the constitutional due process analysis, WCT and Cardio Holdings rely on a footnote in the unreported case, *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, No. 03-612-KAJ, 2004 WL 2346137, *2 n.5 (D. Del. Sept. 13, 2004). In *eSpeed*, however, this Court noted that "[t]he Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause." *Id.* Further, this Court has more recently interpreted the Delaware long-arm statute "as reaching the full limits of the Due Process Clause." *See Power Integrations*, 547 F. Supp. 2d at 370 n.3.

14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Federal Circuit has

further explained that "the due process inquiry requires that we determine whether [WCT]

'purposefully directed [its] activities at residents of [Delaware] and, if so, whether 'the litigation

results from alleged injuries that arise out of or relate to those activities.'" *Akro*, 45 F.3d at 1545

(citations omitted). There is also a "fairness inquiry [that] rounds out the determination whether

personal jurisdiction can be exercised in a given case consistent with the Due Process Clause."

*Id.*

      1.     <u>WCT Has Threatened BSC With Litigation Based On The '475 Patent</u>

WCT is subject to this Court's specific personal jurisdiction based on its transactions with

BSC. In *Akro Corp. v. Luker*, the Federal Circuit held that the patentee, Luker, was subject to

personal jurisdiction in the Northern District of Ohio based on "warning" letters to the

declaratory judgment plaintiff, Akro, and a license agreement with another Ohio resident. 45

F.3d at 1546. In reaching its decision, the Federal Circuit rejected Luker's argument that the

letters were sent to Akro's counsel in North Carolina, and not to Akro directly in Ohio. *Id.* "To

sanction this argument, we must both ignore basic principles of agency law and 'exalt form over

substance in an area where the Supreme Court generally has cautioned against such an

approach.'" *Id.* (citations omitted).

Other Federal Circuit cases have similarly held that defendants may be subject to

personal jurisdiction in the foreign forum based on threats of litigation directed at the plaintiff.

For example, in both *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360-62 (Fed. Cir. 2001), and

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998), the

Federal Circuit found personal jurisdiction based on, *inter alia*, the fact that the defendants in

those cases sent letters to the declaratory judgment plaintiff that threatened litigation. According

to the Court, such actions demonstrated "activities 'purposefully directed' at residents of [the plaintiff's home state]." *Inamed*, 249 F.3d at 1362 (citations omitted).

      The facts supporting this Court's specific personal jurisdiction over WCT are even stronger than the aforementioned Federal Circuit cases.  WCT sued BSC for the alleged infringement of the '475 patent, which is the epitome of a threatening act for purposes of a declaratory judgment action.  (Ex. 6)  Moreover, WCT knew that BSC was a Delaware entity when it filed suit.  (*Id.* ¶ 2)  Thus, WCT has purposefully directed activities against a Delaware entity, *i.e.*, BSC.

      Even before it filed suit against BSC, WCT had substantial contacts with Delaware through negotiations between Dr. Wall, the prior owner of the Wall patents and a current member of WCT's Board of Directors, and BSC.[3]  (D.I. 23, Ex. 1 at § 6.1(c))  For example, on or about February 2005, Dr. Wall sent BSC a letter offering to license his patent rights.  (Ex. 3, at Schedule 2.7(i))  Based on this initial contact, BSC met with Dr. Wall and his representatives on multiple occasions to discuss the possibility of licensing those patent rights.  (*See, e.g.*, Ex. 13)  Moreover, as WCT acknowledges, on or about September 2005, BSC proposed terms for assignment of Dr. Wall's patent rights.  (Ex. 14)  And once these negotiations between the parties fell through, Dr. Wall's agent attempted to re-open negotiations by sending BSC another letter on or about February 2006.  (Ex. 15)

---

[3]    This Court should reject any attempt by WCT to argue that the actions of Dr. Wall cannot be attributed to WCT.  In *Dainippon*, the Federal Circuit noted that "a patent holding subsidiary . . . cannot fairly be used to insulate patent owners from defending declaratory judgment actions . . . ."  142 F.3d at 1271.  Similarly, the formation of WCT cannot be used to wash away the actions of Dr. Wall, the former owner of the application leading to the '475 patent and a current director of WCT.

Nor was WCT's targeting of Delaware entities limited to BSC.  WCT also sued

Medtronic Vascular, Inc., another Delaware corporation.[4]  (Ex. 8, at ¶ 8)  As early as December

2005, WCT admits that Medtronic and Dr. Wall engaged in negotiations relating to a license to

Dr. Wall's patent rights.  (*Id.* ¶ 26)  For example, according to WCT, Medtronic entered into a

non-disclosure agreement with Dr. Wall and offered to take an exclusive license to Dr. Wall's

patent rights.  (*Id.*)

These contacts between WCT, Dr. Wall and Delaware entities satisfy the constitutional

test for "minimum contacts."  This Court should reject any attempt by WCT to argue that none of

these negotiations occurred in Delaware.  As the U.S. Supreme Court explained in *Burger King*

*Corp. v. Rudzewicz*, "[s]o long as a commercial actor's efforts are 'purposefully directed' towards

residents of another State, we have consistently rejected the notion that an absence of physical

contacts can defeat personal jurisdiction there."  471 U.S. 462, 476 (1985).  Nor can WCT

contest that BSC is a Delaware resident.  *See, e.g.*, *Magee v. Essex-Tec Corp.*, 704 F. Supp. 543,

545 (D. Del. 1988) (noting that "as a Delaware corporation Essex is a resident of the State of

Delaware").

    2.    <u>WCT And Cardio Holdings Have Engaged In Financial Transactions</u>

In addition to threatening litigation and engaging in substantial licensing activities with

Delaware companies, WCT has conducted substantial financial transactions with Cardio

Holdings, a Delaware entity.  To the extent this Court were to determine that the limits of

Delaware's long-arm statute and the Due Process Clause are not coextensive, these financial

---

4    Dr. Wall has also sent letters "concerning licensing of the Patents" to, *inter alia*, LeMaitre Vacular, Inc., Endologix, Inc., CardioTech Int'l, Inc., W.L. Gore & Assocs., Inc. and Memry Corp. (Ex. 3, at Schedule 2.7(i))  Each of these companies are also incorporated in Delaware.  Moreover, W.L. Gore & Assocs. has its corporate headquarters in Delaware.

transactions support the exercise of personal jurisdiction and would fall within 10 Del. C.

§ 3104(c)(1) of Delaware's long-arm statute.  Indeed, under the terms of WCT's formation

agreement and its patent assignment agreement with Wall Family Holdings, WCT will continue

to have substantial financial dealings with Cardio Holdings.



REDACTED

### 3.   WCT's Reliance On *Red Wing* Is Misplaced

In arguing that WCT has not had "minimum contacts" with Delaware under the Due

Process Clause, WCT relies heavily on *Red Wing Shoe Company, Inc. v. Hockerson-Halberstadt,*

*Inc.,*148 F.3d 1355 (Fed. Cir. 1998).  (D.I. 22, at 17-18)  This reliance on *Red Wing* is misplaced.

WCT cites *Red Wing* for the proposition that sending threatening letters is insufficient to

subject a patentee to jurisdiction in the declaratory judgment plaintiff's home state.  While the

*Red Wing* Court held that "cease-and-desist letters *alone* do not suffice to justify personal

jurisdiction," 148 F.3d at 1360 (emphasis added), WCT's contacts with Delaware entities

extended beyond sending letters.  As noted above, and unlike the defendant in *Red Wing*, Dr.

Wall engaged in the following additional acts:  (1) met with BSC representatives on multiple

occasions to discuss Dr. Wall's patent rights; (2) exchanged proposed terms for a patent

assignment to BSC; (3) engaged in significant licensing activities with other Delaware entities,

*e.g.*, Medtronic Vascular; and (4) sued BSC and Medtronic Vascular for the alleged infringement

of the '475 patent by other stents.

REDACTED

REDACTED

WCT cannot rely on *Red Wing* to claim that its pre-issuance licensing negotiations with BSC were somehow an attempt to settle its infringement claim. (D.I. 22, at 17-18)  In addressing offers to license, the *Red Wing* court distinguished "hybrid cease-and-desist letters," which are offers to license included within cease-and-desist letters, from more traditional forms of offers to license. *Red Wing*, 148 F.3d at 1361.  According to the Federal Circuit, the offer to license in *Red Wing* was a "hybrid" offer, "more closely akin to an offer for settlement of a disputed claim," rather than a general offer to license, which the court described as "an arms-length negotiation in anticipation of a long-term continuing business relationship." *Id.*

As noted above, nearly two years passed between Dr. Wall's negotiations with BSC and WCT's suit in Texas.  Given this passage of time, it cannot reasonably be said that Dr. Wall's negotiations were an attempt at litigation settlement.  Moreover, unlike the *Red Wing* parties, BSC and Dr. Wall engaged in traditional licensing negotiations.  As noted above, BSC and Dr. Wall's representatives met on multiple occasions.  BSC also proposed terms for assignment of Dr. Wall's patent rights.  BSC and Dr. Wall participated in "an arms-length negotiation in anticipation of a long-term continuing business relationship." *Id.*  Dr. Wall's licensing activities were not "hybrid" cease-and-desist licensing offers.  Thus, *Red Wing* is distinguishable.

**III.     WCT Is The Alter-Ego Of Cardio Holdings**

A.     Legal Standard

The analysis that Delaware courts use to determine an alter-ego relationship is similar to the analysis used to determine whether to pierce the corporate veil.  *E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*, 197 F.R.D. 112 (D. Del. 2000).  The two elements needed to demonstrate an alter-ego relationship are: "(1) whether the [foreign]

defendant over whom jurisdiction is sought has no real corporate identity from a defendant over whom jurisdiction is clear ...; and (2) the existence of acts in [the forum] which can be fairly imputed to the [foreign] defendant and which satisfy the [state's] long-arm statute and/or federal due process requirements." *Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 506 (D. Del. 2003) (citations omitted). "[T]he party asserting jurisdiction must [also] establish some fraud, injustice, or inequity in the use of the corporate form." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998).

The alter-ego analysis begins "with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." *U.S. v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988).

B.    Cardio Holdings Controls WCT

The record confirms that WCT is an alter ego of Cardio Holdings. WCT's stated business purpose is to acquire Dr. Wall's '475 patents and assert that patent against stent manufacturers, *i.e.*, BSC, Cordis, Medtronic and Abbott. (Ex. 5, Marino Dep. Tr. at 25:2 to 26:3, 27:20 to 28:11) Every facet of this business purpose is financed and controlled by Cardio Holdings. For example, as discussed above, WCT was only able to acquire Dr. Wall's patent rights by paying Wall Family Holdings with capital it had received from Cardio Holdings. Moreover, it is Cardio Holdings that pays outside counsel, to assert the '475 patent against stent manufacturers. Further, as discussed above, it is Cardio Holdings that pays for all of WCT's "ongoing operations,"

including employee wages and the rent. Additionally, Cardio Holdings and WCT share a common director, Mr. Marino. Wall Family Holdings, the other purported member, has contributed no capital to WCT. WCT could not exist if it did not receive capital from Cardio Holdings since it does not generate any revenues. *See, e.g., Golden Acres, Inc.*, 702 F. Supp. at 1105 (noting adequate capitalization as a factor considered by the court in determining an alter-ego relationship).

Cardio Holdings, through its appointed director, Mr. Marino, controls WCT. For example, Mr. Marino manages outside counsel, which is the most crucial role in WCT's business, *i.e.*, a business that acquires and asserts patents. Mr. Marino also has the authority to ask Cardio Holdings for more money to finance the "ongoing operations" of WCT. (Ex. 5, Marino Dep. Tr. at 39:19 to 40:6) Unsurprisingly, the role of the other WCT member, Wall Family Holdings, is minimal. When asked what duties Dr. Wall performs for WCT, Mr. Marino vaguely responded, "he is involved in keeping up to date on the litigations."[5] (*Id.* at 23:5-13) Tellingly, Mr. Marino could not identify any specific task that Wall Family Holdings performs for WCT.

At his deposition, Mr. Marino confirmed that WCT and Cardio Holdings are alter-egos when he admitted that the sole business purpose of Cardio Holdings was to be "a member of WCT":

> Q. Generally speaking, do you know what the business purpose of Cardio Holdings is?
>
> A. Cardio Holdings?

---

[5]    Further calling into question any distinction between WCT and Cardio Holdings, both companies presumably share the same office space in Texas. (*See* D.I. 23, Ex. 1 at § 1.5; D.I. 23, ¶ 2)  BSC could not confirm this information, however, because WCT withheld discovery of Cardio Holdings from this case.

Q. Yes.

A. Cardio Holdings is a member of WCT.

Q. Okay. Is that the -- to the best of your knowledge, sitting here today, is that your sole understanding of Cardio Holdings' business purpose?

A. Yes.

(Ex. 5, Marino Dep. Tr. at 26:4-13)

C.   Cardio Holdings' Forum Shopping Tactics Are A
     "Form Of Fraud, Injustice Or Inequity" Against BSC

In addition to maintaining corporate formalities, this Court has also considered whether there has been "some fraud, injustice, or inequity in the use of the corporate form." *C.R. Bard, Inc.*, 997 F. Supp. at 559. By organizing a sham limited liability company to engage in forum shopping in Texas, *i.e.*, WCT, Cardio Holdings has committed a "form of fraud, injustice or inequality" against BSC and this Court. For example, through its tactics, Cardio Holdings has purposefully attempted to detrimentally deny BSC, a long-standing Delaware corporation, this Court, and the State of Delaware a proper forum to adjudicate this action.

The facts reveal that WCT is the alter-ego of Cardio Holdings. WCT is merely a shell company that receives money only when Cardio Holdings supplies it, that holds the patent rights that Cardio Holdings, in essence, bought from Wall Family Holdings and that undertakes the legal actions that Cardio Holdings commands. Setting up shell and sham corporations to forum shop into courts that are perceived as plaintiff friendly is, by definition, a form of inequality. Indeed, forum shopping is specifically designed to maximize and exploit inequality between two possible jurisdictions.

23

IV.     **The First-to-File Rule Does Not Apply To This Action**

A.      This Action Involves Different Products Than The Texas Action

"Where proceedings involving the same parties and issues are pending simultaneously in different federal courts, the first to file rule requires the dismissal of the second-filed suit absent exceptional circumstances." *Abbot Labs. v. Johnson and Johnson, Inc.*, 524 F. Supp. 2d 553, 557 (D. Del. 2007) (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976-979 (2d Cir. 1988)).

The first-to-file rule does not apply in this case because this action and the Texas Action involve different stents, *i.e.*, the Texas Action involves the Taxus Express stent and this action involves the Taxus Liberté and Promus stents. WCT erroneously claims that both the Texas Action and this Declaratory Judgment action deal with the same legal issues because WCT is asserting the same patent. (D.I. 22, at 20-21) It is black-letter law that actions involving products that are different in non-colorable ways, implicate different legal issues. *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991).

Nor can WCT rely on the boilerplate language, "Taxus products, and other products and services related to coronary, carotid, and peripheral stents," in its first and second amended complaints to include BSC's Promus and Taxus Liberté stents, which were not approved for sale in the U.S. at the time those complaints were filed. WCT's Second Amended Complaint was filed on March 13, 2008. (Ex. 8) The Promus stent was approved for sale in the U.S. in July 2008, four months later. The Taxus Liberté stent was approved for sale in the U.S. in November 2008, another four months later still. While BSC has been making Taxus Liberté stents in the U.S. for sale outside of the U.S. since 2005, such acts could not constitute infringement for

purposes of WCT's asserted method claims until BSC obtained FDA approval in November 2008.[6]

Because the Promus and Taxus Liberté stents were not approved for sale at the time WCT filed its Complaints, WCT could not allege infringement against BSC at that time.

> B.    The First-To-File Rule Does Not Apply Because This Action
>        Falls Under One Of The Many Exceptions To The Rule

Even if this Court were to find that this action involves the same issues and accused stents as the Texas Action, the first-to-file rule should still not be applied.  While it is true that "[t]he general rule favors the forum of the First-to-File action . . ., [e]xceptions . . . are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).  While the Court has the authority to enjoin an action under the first-to-file rule, that authority "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or *forum shopping*.  District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (2d Cir. 1988) (emphasis added).

> 1.    WCT's Forum Shopping Precludes Application Of The First-To-File Rule

This Court has recognized forum shopping as "a proper basis for departing from the first-filed rule." *Abbott Labs.*, 524 F. Supp. 2d at 558.  The facts reveal that WCT was organized to engage in forum shopping.  For example, WCT was formed in Texas on November 2, 2007, just

---

[6]    In the Texas Action, the sole independent claim of the '475 patent that WCT asserted against the Taxus Express stent was Claim 30, a method claim that can only be infringed when a physician in the U.S. implants the stent. If a stent is not approved for use in the U.S., it logically follows that, absent extenuating circumstances, a physician in the U.S. cannot use the stent, and thereby allegedly infringe the method claim.

two weeks before the Texas Complaint was filed. (D.I. 23, Ex. 1 at 1; Ex. 6, WCT's Original

Complaint) Prior to WCT's organization and acquisition of the Wall patents, those patent rights

belonged to Dr. Wall, the named inventor on the '475 patent and a Georgia resident. (D.I. 11, at

¶ 2) None of the defendants in the Texas Action have any particular connection to Texas. For

example, none of the defendants are incorporated in Texas and none have a principal place of

business there. (Ex. 8, at ¶¶ 2-8)

     None of the operative facts occurred in Texas either. As discussed above, WCT does not

make or sell any products. Nor does the file history of the '475 patent indicate that the patented

subject matter was conceived of or developed in Texas.[7] The record also does not reveal Dr.

Wall engaging in any meaningful licensing activity in Texas. There is also no reason to believe

that any of the stents accused of infringement in the Texas Action were manufactured in that

state. Nor are the Promus and Taxus Liberté stents manufactured in Texas.

     In contrast, BSC has been a Delaware corporation since 1979. BSC has employees that

live and work in Delaware and it conducts significant business in the State. BSC pays various

Delaware taxes as a result of its businesses. Moreover, BSC's status as a Delaware corporation

was fully known to WCT throughout its contacts with BSC. As a long-time Delaware

corporation and an active member in the State's commerce, BSC is entitled to choose the District

of Delaware as an appropriate forum for this action.

     Cardio Holdings' decision to organize WCT in Texas was a blatant attempt to avoid this

Court's jurisdiction. Cardio Holdings knew that this Court is the most appropriate forum for this

---

[7]   Due to an interference that was provoked during prosecution of the '475 patent application, the file wrapper contains extensive details regarding Dr. Wall's alleged conception and reduced to practice of the patented subject matter. While BSC has not included the prosecution history due to its volume, it can do so at the Court's request.

case.  For example, Dr. Wall engaged BSC in negotiations while BSC was involved in another

stent litigation in this Court, *i.e.*, Civil Action No. 03-027-SLR.  Seeking to avoid this Court's

knowledge of Dr. Palmaz's work and other key prior art references, however, WCT was hastily

organized in Texas.  Such gamesmanship is contrary to the public policy underlying the first-to-

file rule, and WCT's and Cardio Holdings' attempt to invoke it should be denied.

2.    Litigating In The District Of Delaware Serves Judicial Economy

"Judicial economy is a factor of substance that weighs heavily in favor of departing from

the first-filed rule."  *Capitol Records Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354

(S.D.N.Y. 1992).  Given this Court's unique knowledge of Dr. Palmaz's work and his patents,

requiring WCT and Cardio Holdings to litigate this action in Delaware would promote judicial

economy.

a.    This Court's Expertise In Stent Cases Has Been Recognized

In *Medtronic AVE, Inc. v. Cordis Corp.*, 2:02-CV-73-DF (E.D. Tex. Mar. 19, 2003),

Medtronic alleged that Cordis' BX Velocity stent infringed four of its patents.  (Ex. 16, slip op. at

2)  The Eastern District of Texas granted Cordis' motion to transfer the case to the District of

Delaware given this Court's extensive experience with stent patent cases:

> There are four major competitors in the United States stent market:
> [Medtronic], Cordis, [Abbott] . . . and Boston Scientific Corp.  All of these
> companies are currently or have been involved in patent infringement cases
> in the District of Delaware before Chief Judge Robinson. . . . Chief Judge
> Robinson has presided over litigation in stent patent cases that has included
> trial, a preliminary injunction hearing, numerous substantive motions,
> construing of claims, and disclosure review.  Chief Judge Robinson has
> familiarity with the medical issues involving the use of stents, engineering
> issues involving stent design and technology, the dynamics of the stent
> market, the relevant prior art, and the products of the various companies.

(*Id.*, slip op. at 1-3)

As the Eastern District of Texas explained, this Court is "uniquely qualified to preside over issues involving stent patents due to her detailed history with cases involving all four major United States manufacturers including, especially, the two parties in this litigation." (*Id.*, slip op. at 14)  Cordis' motion to transfer was thus granted because "the history of stent patent litigation in Delaware indicates that it is the appropriate forum." (*Id.*, slip op. at 7-15)

                b.      This Court Has Substantial Experience With The
                        Technology And Relevant Prior Art In This Action

This Court's experience with stent patent cases has only grown since 2003, when the Eastern District of Texas granted Cordis' motion to transfer the *Medtronic* action.  For example, in Civil Action No. 08-779-SLR, this Court is presiding over a stent patent case involving the Taxus Liberté stent.  In Civil Action No. 07-765, this Court is presiding over another stent patent case involving the Promus stent.  Thus, the technology at issue in this action is already before the Court.  There is no sound basis for requiring the Texas court to also familiarize itself with the Taxus Liberté and Promus stents.

In these stent cases, this Court has reviewed *Markman* briefs and construed claims, decided summary judgment motions regarding infringement and validity, presided over preliminary injunction hearings and jury trials, ruled on post-trial briefs and issued final judgments.  This Court has also benefited from extensive expert testimony explaining the nuances of the functionality of the accused stents, the relevant prior art, the stent industry and other medical considerations.  This Court is in position to adjudicate the instant action expeditiously and consistently with prior rulings.  (Ex. 16, *Medtronic*, slip op. at 7-15 (finding that "transferring this case to the District of Delaware serves the interests of justice because it will promote the most grave concern of judicial economy, which is the promotion of consistent judgments"); Ex. 17, *LG Elecs., Inc. v. Hitachi, Ltd.*, No. 9:07-CV-138, 2007 WL 4411035, at *5

(E.D. Tex. Dec. 3, 2007) (finding transfer strongly favored where transferee judge "is already familiar with the issues and would waste no time in learning the technology, or 'getting a feel' for the case and the parties"))

This Court's familiarity with Dr. Palmaz's work will further promote judicial economy. As discussed above, BSC intends to assert Dr. Palmaz's work and patents as prior art against the '475 patent. Dr. Palmaz's testimony will be critical to BSC's case-in-chief. This Court has heard live trial testimony from Dr. Palmaz regarding the subject matter of his patents in past cases. Based on this experience, there can be no dispute that having this Court preside this over case would promote judicial economy.

> c.   BSC's Motion To Transfer Or Consolidate Will Mitigate Any Risk Of Two Court Adjudicating The Same Legal Issues

If this Court denies WCT and Cardio Holdings' motions as BSC respectfully requests, there is little risk that this Court and the court in the Texas Action will adjudicate the same legal issues, *e.g.*, invalidity and unenforceability. BSC was prepared to file either a motion to transfer the Texas Action to this Court or a motion to consolidate with the Judicial Panel On Multidistrict Litigation before WCT filed its motion to dismiss. If this Court resolves the jurisdictional issue in BSC's favor, BSC intends to file its motion to transfer or consolidate promptly.

For at least the reasons stated above, there would be strong public policy reasons for transferring this case to this Court. For example, this Court is very familiar with the accused products and the subject matter of the asserted patent. WCT and Cardio Holdings have also blatantly engaged in forum shopping by organizing WCT in Texas on the eve of filing suit.

Neither WCT nor Cardio Holdings would be prejudiced by proceeding in this Court. As discussed above, Cardio Holdings is organized in Delaware. Moreover, the parties are only now beginning the discovery process in the Texas Action, and trial is not scheduled until April 2011.

(Ex. 1, Docket Control Order)  The instant action could readily be put on a schedule in this Court

that would lead to disposition well before that time.

## CONCLUSION

For all the reasons set forth above, BSC respectfully requests that this Court deny all of

WCT and Cardio Holdings' motions.


Dated:  April 15, 2009                             Respectfully submitted,


                                              ___/s/ Adam W. Poff_____
                                              Josy W. Ingersoll (I.D. #1088)
                                              John W. Shaw (I.D. #3362)
                                              Adam W. Poff (I.D. #3990)
                                              YOUNG CONAWAY STARGATT
                                                 & TAYLOR, LLP
                                              The Brandywine Building
                                              1000 West Street, 17th Floor
                                              P.O. Box 391
                                              Wilmington, Delaware 19801
                                              (302) 571-6600

                                              *Attorneys for Plaintiffs*
                                              *Boston Scientific Corporation and*
                                              *Boston Scientific Scimed, Inc.*


*Of Counsel*:

John M. Desmarais
Peter J. Armenio
Young J. Park
KIRKLAND & ELLIS
153 East 53rd Street
New York, New York 10022
(212) 446-4800

**CERTIFICATE OF SERVICE**

I, Pilar G. Kraman, Esquire, hereby certify that on April 15, 2009, I caused to be

electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF,

which will send notification that such filing is available for viewing and downloading to the

following counsel of record:

> Francis DiGiovanni, Esquire [fdigiovanni@cblh.com]
> Chad S.C. Stover, Esquire
> Connolly Bove Lodge & Hutz LLP
> 1007 N. Orange Street
> Wilmington, DE 19899

I further certify that on April 15, 2009, I caused a copy of the foregoing document to be

served by e-mail on the above-listed counsel and on the following non-registered participants in

the manner indicated:

> ***By E-Mail***
>
> Stephen D. Susman, Esquire [ssusman@susmangodfrey.com]
> Max L. Tribble, Jr., Esquire [mtribble@susmangodfrey.com]
> Vineet Bhatia, Esquire [vbhatia@susmangodfrey.com]
> Stephen Schlather, Esquire [sschlather@susmangodfrey.com]
> Susman Godfrey L.L.P.
> 1000 Louisiana Street, Suite 5100
> Houston, TX 77002-5096
>
> Stephen Shackelford, Esquire [sshackelford@susmangodfrey.com]
> Susman Godfrey L.L.P.
> 901 Main Street, Suite 5100
> Dallas, TX 75202-3775
>
> Michael F. Heim, Esquire [mheim@hpcllp.com]
> Russell Chorush, Esquire [rchorush@hpcllp.com]
> Heim, Payne & Chorush, L.L.P.
> 600 Travis Street, Suite 6710
> Houston, TX 77002-2912
>
> Franklin Jones, Jr., Esquire [maizieh@millerfirm.com]
> Jones and Jones, Inc., P.C.
> 201 West Houston Street
> P.O. Drawer 1249
> Marshall, TX 75671

Otis Carroll, Esquire [otiscarroll@icklaw.com]
Ireland, Carroll & Kelley P.C.
6101 South Broadway, Suite 500
Tyler, TX 75703

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
John W. Shaw (#3362) [jshaw@ycst.com]
Adam W. Poff (#3990) [apoff@ycst.com]
Pilar G. Kraman (#5199) [pkraman@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Adam W. Poff, Esquire, hereby certify that on April 22, 2009, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Francis DiGiovanni, Esquire [fdigiovanni@cblh.com]
> Chad S.C. Stover, Esquire
> Connolly Bove Lodge & Hutz LLP
> 1007 N. Orange Street
> Wilmington, DE 19899

I further certify that on April 22, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

### *By E-Mail*

> Stephen D. Susman, Esquire [ssusman@susmangodfrey.com]
> Max L. Tribble, Jr., Esquire [mtribble@susmangodfrey.com]
> Vineet Bhatia, Esquire [vbhatia@susmangodfrey.com]
> Stephen Schlather, Esquire [sschlather@susmangodfrey.com]
> Susman Godfrey L.L.P.
> 1000 Louisiana Street, Suite 5100
> Houston, TX 77002-5096

> Stephen Shackelford, Esquire [sshackelford@susmangodfrey.com]
> Susman Godfrey L.L.P.
> 901 Main Street, Suite 5100
> Dallas, TX 75202-3775

> Michael F. Heim, Esquire [mheim@hpcllp.com]
> Russell Chorush, Esquire [rchorush@hpcllp.com]
> Heim, Payne & Chorush, L.L.P.
> 600 Travis Street, Suite 6710
> Houston, TX 77002-2912

> Franklin Jones, Jr., Esquire [maizieh@millerfirm.com]
> Jones and Jones, Inc., P.C.
> 201 West Houston Street
> P.O. Drawer 1249
> Marshall, TX 75671

Otis Carroll, Esquire [otiscarroll@icklaw.com]
Ireland, Carroll & Kelley P.C.
6101 South Broadway, Suite 500
Tyler, TX 75703

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Adam W. Poff*
Josy W. Ingersoll (#1088) [jingersoll@ycst.com]
John W. Shaw (#3362) [jshaw@ycst.com]
Adam W. Poff (#3990) [apoff@ycst.com]
Pilar G. Kraman (#5199) [pkraman@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

*Attorneys for Plaintiffs*