IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC )
CORPORATION and BOSTON )
SCIENTIFIC SCIMED, INC., )
 )
    Plaintiffs, )
 )
v. ) Civ. No. 08-489-SLR
 )
WALL CARDIOVASCULAR )
TECHNOLOGIES, LLC, and CARDIO )
HOLDINGS LLC, )
 )
    Defendants. )

Josy W. Ingersoll, Esquire, John W. Shaw, Esquire, and Adam W. Poff, Esquire, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: John M. Desmarais, Esquire, Peter J. Armenio, Esquire, and Young J. Park, Esquire, of Kirkland & Ellis LLP, New York, New York.

Francis DiGiovanni, Esquire, and Chad S.C. Stover, Esquire, of Connolly Bove Lodge & Hutz LLP, Wilmington Delaware. Counsel for Defendant. Of Counsel: Stephen D. Susman, Esquire, Max L. Tribble, Jr., Esquire, Vineet Bhatia, Esquire, and Stephen Schlather, Esquire, of Susman Godfrey L.L.P., Houston, Texas, Stephen Shackleford, Jr., Esquire, of Susman Godfrey L.L.P., Dallas, Texas, Michael F. Heim, Esquire, and Russ Chorush, Esquire, of Heim, Payne & Chorush, L.L.P., Houston, Texas, Franklin Jones, Jr., Esquire, of Jones and Jones, Inc., P.C., Marshall, Texas, and Otis Carroll, Esquire, of Ireland, Carroll & Kelly P.C., Tyler, Texas.

**MEMORANDUM OPINION**

Dated: August 24, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs Boston Scientific Corporation ("BSC") and Boston Scientific Scimed, Inc. ("Scimed") (collectively, "plaintiffs") brought this suit against defendant Wall Cardiovascular Technologies, LLC ("WCT") on August 6, 2008, seeking declaratory judgment of noninfringement, invalidity, and unenforceability of United States Patent No. 6,974,475 ("the '475 patent"). (D.I. 1) On October 9, 2008, WCT filed a motion to dismiss, arguing, *inter alia*, a lack of personal jurisdiction. (D.I. 9) On January 2, 2009, after taking jurisdictional discovery, BSC amended its complaint to, *inter alia*, add Cardio Holdings LLC ("Cardio Holdings") as a defendant. (D.I. 16)

WCT and Cardio Holdings (collectively, "defendants") move to dismiss the amended complaint, principally arguing that the court: (1) lacks personal jurisdiction over WCT because WCT has insufficient contacts with Delaware and cannot have Cardio Holding's contacts attributed to it under an alter ego theory; (2) lacks subject matter jurisdiction over the declaratory judgment claims against Cardio Holdings because Cardio Holdings does not own the '475 patent and is not party to an actual controversy with respect to the '475 patent; and (3) should dismiss the suit pursuant to the "first to file" rule because the same parties are already litigating the same issues in an earlier filed suit in the Eastern District of Texas. (D.I. 21) For the reasons that follow, the court grants the motion.[1]

---

[1] The court also denies as moot WCT's earlier filed motion to dismiss (D.I. 9).

## II. BACKGROUND

### A. The Parties

BSC is a Delaware corporation with its principal place of business in Natick, Massachusetts. (D.I. 16 at ¶ 1) Scimed is a Minnesota corporation with its principal place of business in Maple Grove, Minnesota. (*Id.* at ¶ 2) Plaintiffs manufacture, sell, and distribute drug-eluting stents under the trade names TAXUS EXPRESS® and TAXUS LIBERTÉ®. (*Id.* at ¶ 14) Pursuant to an agreement with Abbott Laboratories and Abbott Cardiovascular Systems, Inc. (collectively, "Abbott"), plaintiffs also sell Abbott's XIENCE® stents under the PROMUS® brand and have a license to directly manufacture and sell PROMUS® stents. (*Id.* at ¶¶ 7, 12-13)

WCT is a Texas limited liability company with its principal place of business in Marshall, Texas. (*Id.* at ¶ 3; D.I. 23, ex. 1 at 2) WCT has two members (D.I. 23 at ¶ 5): Cardio Holdings, which is a Delaware limited liability company with its principal place of business in Marshall, Texas (D.I. 16 at ¶ 5); and W.H. Wall Family Holdings, LLLP ("WFH"), which is a Georgia limited liability limited partnership (D.I. 11 at ¶ 3). Each member owns fifty percent of WCT. (D.I. 23 at ¶ 5) As initial capital contributions, Cardio Holdings contributed $2 million to WCT (*id.*, ex. 1 at sched. A), while WFH assigned to WCT all rights and interests in the '475 patent (*id.*; D.I. 11 at ¶ 3). WCT used the initial $2 million to pay WFH for the assignment of the '475 patent. (D.I. 23, ex. 1 at § 2.2) Cardio Holdings must also contribute a total of $2 million more to WCT by November 2009 to be used as additional payments to WFH. (*Id.*) Cardio Holdings also funds WCT's payment of legal bills, employee salaries and rent costs. (D.I. 31, ex.

2

5 at 22-23) The main business goal of WCT is to assert and license its intellectual property. (D.I. 23, ex. 1 at § 1.6)

WCT is governed by a three-person Board of Directors, with WFH and Cardio Holdings each naming one Governing Director to the Board. (D.I. 23, ex. 1 at § 6.1) The third Director, whose purpose is to help resolve disputes between the Governing Directors, is chosen by agreement between the Governing Directors. (*Id.*) The Director that WFH appointed is Dr. W. Henry Wall ("Wall"), the inventor of the '475 patent and a partner in WFH. (*Id.*; D.I. 11 at ¶¶ 2, 3) The Director that Cardio Holdings appointed is William A. Marino ("Marino"), a director of Cardio Holdings. (D.I. 23 at ¶¶ 2,3)

As WCT's "Managing Director," Marino controls WCT's "day-to-day business, affairs, and properties . . . in accordance with the [budget approved by the Board] and the general guidelines and policies established by the Board . . . ." (D.I. 23, ex. 1 at § 6.1) Some of these duties include monitoring the work of WCT's outside counsel, reviewing legal invoices for WCT, and informing WFH of litigation notices and motions. (D.I. 31, ex. 5 at 22-23, 40-41) This authority does not extend to any actions requiring Board approval including, *inter alia*, "the sale, disposition, acquisition or licensing of the Patents [owned by WCT] or rights therein," "any merger or consolidation of the Company," "the issuance of additional Membership Interests," "the incurrence of indebtedness," commencing legal action, the selection or termination of legal counsel, and "material decisions relating to strategy, venue, targets and other matters pertaining to any" legal proceeding. (D.I. 23, ex. 1 at § 6.1)

As WCT has not yet been successful in licensing its patent rights, it has not been able to generate any revenue of its own. (D.I. 31, ex. 5 at 26-27) Thus, Cardio

3

Holdings has been the sole source of funding for WCT. (*Id.* at 41) When Cardio Holdings transfers funds from its own bank account to WCT's account, it does so by wire pursuant to specifications in WCT's governing document. (*Id.* at 37) If WCT does generate income in the future, both WFH and Cardio Holdings have a contractual right to receive additional payments. (D.I. 23, ex. 1, §§ 4.1, 5.1)

### B. The Pending Texas Litigation

The '475 patent is currently the subject of two patent infringement cases pending in the United States District Court for the Eastern District of Texas. On November 16, 2007, WCT filed suit ("the first Texas suit") claiming infringement of the '475 patent by BSC and Johnson & Johnson ("J&J"). (D.I. 12, ex. 1) WCT alleged that "BSC has infringed and continues to infringe the '475 patent by its manufacture, use, sale and/or offer for sale of BSC's Taxus Express products, **and other products and services related to coronary, carotid and peripheral stents** . . . ." (*Id.*, ex. 1 at ¶ 12) (emphasis added) On February 1, 2008, WCT amended its complaint in the first Texas suit by adding as defendants Scimed and Cordis Corporation ("Cordis"), wholly owned subsidiaries of BSC and J&J, respectively. (*Id.*, ex. 2 at ¶¶ 3, 5) The amended complaint mirrored the original, changing only the accused parties (adding Scimed and Cordis) and the accused products (expanding the description from "BSC's Taxus Express products" to the broader "BSC's Taxus products"). (*Id.*, ex. 2 at ¶ 10) On March 13, 2008, WCT again amended the complaint in the first Texas suit by adding Medtronic, Inc., Medtronic USA, and Medtronic Vascular, Inc. (*Id.*, ex. 3 at ¶¶ 6-8)

Besides adding defendants, this second amended complaint is the same as the previous version. (*Id.*, ex. 3 at ¶ 13)

On July 25, 2008, WCT filed another suit ("the second Texas suit") in the Eastern District of Texas based on the '475 patent. (*Id.*, ex. 8) In that action, WCT alleged that Abbott infringed and continues to infringe the '475 patent by its manufacture, use, sale and/or offer for sale of Abbott's XIENCE V Drug Eluting Stent Product . . . ." (*Id.*, ex. 8 at ¶ 8) After the two Texas suits illuminated BSC's possible infringement of the '475 patent based on its sale of Abbott's XIENCE® stents under the PROMUS® brand as well as its sale of drug-eluting stents under the trade name TAXUS LIBERTÉ®, BSC filed the pending action for a declaratory judgment of noninfringement, invalidity and unenforceablity of the '475 patent. The two stents at issue in this suit, the PROMUS® stent and the TAXUS LIBERTÉ® stent, were launched for sale in the United States by BSC in July 2008 and November 2008, respectively. (D.I. 30 at 11)

### C. WCT's Contacts with Delaware

WCT negotiated with BSC and other Delaware entities over use of the '475 patent, including the following activities:

- In February 2005, Wall sent a letter to BSC attempting to license patent rights. (D.I. 31, ex. 3, at sched. 2.7(l))

- Throughout February 2005, WCT sent letters to companies incorporated in Delaware to discuss licensing patents, including LeMaitre Vascular, Inc., Endologix, Inc., CardioTech Int'l, Inc., W.L. Gore & Assocs., Inc. and Memry Corp.[2] (*Id.*)

---

[2]Plaintiffs do not allege that these letters were sent into Delaware, but only that these companies are incorporated in Delaware and that W.L. Gore & Assocs. has its corporate headquarters in Delaware. (D.I. 30 at 17 n.4)

- In May 2005, Wall's attorney met with BSC representatives in Georgia to discuss licensing patent rights. (*Id.*, ex. 13)

- In September 2005, BSC proposed terms for a possible assignment of Wall's patent rights, although negotiations eventually fell through. (*Id.*, ex. 14)

- In December 2005, Wall and Medtronic, a Delaware corporation, engaged in negotiations relating to licensing patent rights, including Medtronic's entering into a non-disclosure agreement with Wall and offering to take an exclusive license to the patent rights. (*Id.*, ex. 8 at ¶ 26)

- In February 2006, Wall tried to restart negotiations for licensing with BSC, but BSC declined. (*Id.*, ex. 15)

WCT also engaged in several financial transactions with Cardio Holdings, including, as discussed *supra*, cash transfers for paying WFH and for paying employees and rent.

## III. STANDARDS OF REVIEW

In reviewing a motion filed under Rule 12(b)(1), the court must first identify whether the motion presents a facial or factual challenge to the court's subject matter jurisdiction. *See Samsung Elecs. Co., Ltd. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008). Where the movant presents a facial challenge, the court must accept all factual allegations in the complaint as true and may only consider the complaint and documents referenced therein or attached thereto. *Id.* (citing *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Where the movant presents a factual challenge, the court need not confine its consideration to the allegations of the complaint nor accept those allegations as true. *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Rather, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, "to

6

resolve any factual issues bearing on jurisdiction."³ *Samsung*, 541 F. Supp. 2d at 648 (citing *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)). "[P]laintiff bears the burden of proving that [subject matter] jurisdiction exists." *Id.*

In reviewing a motion filed under Rule 12(b)(2), the court must accept all of a plaintiffs' allegations as true and construe disputed facts in the plaintiff's favor. *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). A plaintiff still, however, bears "the burden of demonstrating the facts that establish personal jurisdiction."⁴ *Id.* (citing *Mellon Bank (East) PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

## IV. DISCUSSION

### A. Personal Jurisdiction Over WCT

The issue of personal jurisdiction in patent infringement cases is governed by Federal Circuit law. *See Avocent Huntsville Corp. v. Allen Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). Under Federal Circuit law, a court addressing personal jurisdiction is to make two inquiries: (1) "whether a forum state's long-arm statute

---

³Although the court should determine subject matter jurisdiction at the outset of a case, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation." *See* 2 James W. Moore, Moore's Federal Practice § 12.30[1] (3d ed. 1997). Rather, a party may first establish jurisdiction "by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection)." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38 (1995) (citations omitted).

⁴"[C]ourts are to assist the plaintiff [in meeting its burden] by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

7

permits service of process;" and (2) "whether the assertion of personal jurisdiction would violate due process." Id. (citation omitted). Cf. L'Athene, Inc. v. EarthSpring LLC, 570 F. Supp. 2d 588, 590 (D. Del. 2008) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 (3d Cir. 1984) (to establish personal jurisdiction, plaintiff must show, by a preponderance of the evidence, that (1) "there is a statutory basis for jurisdiction under the forum state's long-arm statute" and (2) "the exercise of jurisdiction comports with the defendant's right to due process"); Reach & Assocs. P.C. v. Dencer, 269 F. Supp. 2d 497, 502 (D. Del. 2003)). Delaware state courts interpret Delaware's long-arm statute as "confer[ring] jurisdiction to the maximum extent possible under the Due Process Clause."[5] Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd., 611 A.2d 476, 480-81 (Del. 1992); LaNuova D & B S.p.A. v. Bowe Co., Inc., 513 A.2d 764, 768 (D. Del. 1986); see also Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997, aff'd, 707 A.2d 765 (Del. 1998). However, the jurisdictional analysis "must not be collapsed into a single constitutional inquiry." Power Integrations, Inc. v. BCD Semiconductor Corp., 547 F. Supp. 2d 365, 370 n.3 (D. Del. 2008). Accordingly, personal jurisdiction over a defendant is only proper if it meets the requirements of Delaware's long-arm statute and, separately, comports with due process.

Pursuant to Delaware's long-arm statute, 10 Del. C. § 3104, a court may exercise personal jurisdiction over a defendant where the defendant or its agent:

---

[5]The court applies the Delaware long-arm statute consistent with Delaware state courts' interpretations. Intel Corp. v. Broadcom Corp., 167 F. Supp. 2d 692, 700 (D. Del. 2001); see also LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1371 (Fed. Cir. 2000).

8

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;
>
> (4) Causes tortious injury[6] in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business [in the State], engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;[7]
>
> (5) Has an interest in, uses or possesses real property in the State; or
>
> (6) Contracts to insure or act as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c) (emphasis added). Subsections (c)(1), (c)(2), (c)(3), (c)(5), and (c)(6) of the long-arm statute require a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008); *G & G LLC v. White*, 535 F. Supp. 2d 452, 461 (D. Del. 2008); *Dencer*, 269 F. Supp. 2d at 503-05. In contrast, subsection (c)(4) of the long-arm statute requires a showing of general jurisdiction, that is, a showing that defendant or its agent, through more than minimum contacts, is "generally present" in the forum state. *See G & G LLC v. White*, 535 F. Supp. 2d at 461; *Shoemaker*, 556 F. Supp. 2d at 355.

---

[6]Patent infringement is a tortious act for purposes of the Delaware long-arm statute. *Merck & Co., Inc. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 373 (D. Del. 2002).

[7]The long-arm statute lists the subsection (c)(4) activities in the disjunctive, and the defendant need only engage in one for that subsection to apply. *Power Intergrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 374 (D. Del. 2008) (citing *LaNuova*, 513 A.2d at 769).

9

If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process. *Shoemaker*, 556 F. Supp. 2d at 354. The exercise of personal jurisdiction comports with due process where "the defendant's conduct is such that it should 'reasonably anticipate being haled into court there.'" *L'Athene*, 570 F. Supp. 2d at 591 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Personal jurisdiction may be either specific or general. *Vikoma Int'l, Ltd. v. Oil Stop, Inc.*, 1993 WL 14647, at *2 (D. Del. Jan. 14, 1993). For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Woodson*, 444 U.S. at 297). For the court to exercise general personal jurisdiction consistent with due process, plaintiff's cause of action can be unrelated to the defendant's activities in the forum state so long as the defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470 (D. Del. 1991); *Vikoma*, 1993 WL 14647, at *2.

The court identifies three principal arguments made by plaintiffs in favor of exercising personal jurisdiction over WCT: (1) WCT's own actions create sufficient minimum contacts with Delaware to satisfy due process; (2) WCT is the alter ego of Cardio Holdings and so can be deemed a Delaware entity; and (3) WCT is a member of Cardio Holdings and so can be deemed a Delaware entity. The court addresses these arguments in order.

10

### 1. WCT's own actions

Plaintiffs argue that WCT, by negotiating with Delaware entities over use of the '475 patent and engaging in financial transactions with Cardio Holdings, created sufficient minimum contacts with Delaware to satisfy due process. The overriding problem with this argument, of course, is that it collapses the jurisdictional analysis into a single due process inquiry. As explained above, this is improper. *See Wright v. American Home Products Corp.*, 768 A.2d 518, 527 (Del. Super. 2000) ("unlike other jurisdictions which combine the two tests into determining jurisdiction on [due process] alone, Delaware must go through the two-test analysis"); *Hercules, Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, 611 A.2d 476, 483 (Del. Supr. 1992)).

As related above, the only activities WCT purposely directed at Delaware residents were: (1) WCT's financial transactions with Cardio Holdings; and (2) asserting its patent rights against BSC, a Delaware corporation. The record demonstrates that, although the above activities were directed **at** Delaware residents, none of them actually took place **in** Delaware, as required by § 3104(c)(1).[8] Absent evidence of continuous and systematic contacts with Delaware (as contemplated under § 3104(c)(4)), transacting business with a Delaware corporation outside of Delaware does not satisfy Delaware's long-arm statute. *See Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156 (Del. Super. 1997) ("it is clear that this section also requires that the

---

[8]Likewise, while plaintiffs allege that WCT sent letters to corporations formed under the laws of Delaware in attempts to negotiate licenses for the '475 patent, plaintiffs do not allege that those negotiations actually occurred in Delaware.

11

defendant perform the act in this State"); Outokumpu Eng'g Enters. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 729 (Del. Super. 1996).

Even if the court were to assume that WCT is amenable to process under the Delaware long-arm statute, plaintiffs have not demonstrated that the court can exercise personal jurisdiction over WCT consistent with due process. More specifically, plaintiffs have not established that WCT has "minimum contacts" with Delaware "such that [it] should reasonably anticipate being haled into court [here]." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358-59 (Fed. Cir. 1998). Most significantly, the Federal Circuit has consistently held that "warning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and non-infringement." *Akro Corp. v. Luker*, 45 F.3d 1541, 1548 (Fed. Cir. 1995). Absent some additional activity aimed at the forum state,[9] therefore, the conduct at bar does not pass constitutional muster.[10]

---

[9]In *Akro*, for instance, the patentee was deemed to have substantial contacts with an exclusive licensee who was incorporated and had its principal place of business in the forum state. Moreover, the Federal Circuit concluded that, because the license agreement required the patentee to defend and pursue any infringement actions involving the licensee's patent (which also was the patent in suit), the cause of action was related to the activities.

[10]None of the 2005 conduct took place in Delaware, but was directed to BSC outside of Delaware. These circumstances are distinguishable from those discussed in *Akro*, wherein the Federal Circuit (based on the law of agency) determined that a letter sent to a non-resident lawyer should be deemed directed to the resident, thus establishing a contact with the forum state. Clearly there is no support for the proposition that any activity directed to a Delawre corporation that conducts its business elsewhere is deemed to have taken place in Delaware.

12

## 2. Jurisdiction based on the alter ego theory

Plaintiffs argue WCT is subject to personal jurisdiction in Delaware because it is the alter ego of Delaware entity Cardio Holdings. "Under the alter ego theory, a court may attribute the actions of a subsidiary to its parent and ignore corporate boundaries if the court finds that the subsidiary is a mere 'alter ego' of the parent." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 559 (D. Del. 1998). This theory properly applies where plaintiff shows "some fraud, injustice, or inequity in the use of the corporate form." *Id.* An analysis under this theory must

> start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*U.S. v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988) (citing *Dewitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 686-87 (4th Cir.1976)).

To support this theory, plaintiffs argue that Cardio Holdings controls WCT and that WCT is merely a shell and a sham created for the purposes of forum shopping. Plaintiffs, however, overstate the level of control that Cardio Holdings has over WCT. Cardio Holdings pays for WCT's ongoing operations, but did not (as plaintiffs contend) supply all of the capital to create WCT. In terms of cash financing, Cardio Holdings was the sole contributor, but WFH contributed a significant portion of capital by assigning the patent rights to WCT. The initial capital contribution was viewed as equal by both parties and resulted in an allocation of exactly 50% ownership in WCT to each member.

13

Although plaintiffs argue that "WCT could not exist if it did not receive capital from Cardio Holdings" (D.I. 30 at 22), defendants correctly point out that WCT could not exist if WFH never contributed capital in the form of patent rights. There is also no evidence to establish that any of the cash transfers between WCT and Cardio Holdings resulted in commingled funds.

Plaintiffs also point to Marino's role as a common director to WCT and Cardio Holdings as further evidence of Cardio Holdings' control over WCT. WCT's governing document clearly establishes a three-person board, with one Governing Director appointed by each member, that is responsible for making any material business decision. Marino, as the managing member overseeing WCT's day-to-day operations, must make his decisions "in accordance with . . . the general guidelines and policies established by the Board." (D.I. 23, ex. 1 at § 6.1) Thus, while Marino is a director on both boards, the restrictions that WCT places on his decision-making authority sufficiently limit his influence that it cannot be said, on this record, that WCT has no real corporate identity separate from Cardio Holdings. There is nothing of record to indicate that WCT and Cardio Holdings have strayed from maintaining the corporate formalities that the alter ego theory contemplates.

Neither can plaintiffs show "fraud, injustice, or inequity in the use of the corporate form." Plaintiffs argue that WFH and Cardio Holdings formed WCT as a "sham limited liability company to engage in forum shopping in Texas." (D.I. 30 at 23) This argument is unpersuasive, however, as forum shopping, if it constitutes "fraud" at all, is not the type of fraud with which the alter ego theory is concerned. Accordingly, the court

14

concludes that WCT cannot be subject to personal jurisdiction in Delaware under the alter ego theory.

### 3. Jurisdiction based on Cardio Holdings as a member of WCT

Plaintiffs' final argument is that personal jurisdiction over an LLC is proper in any forum in which the LLC's members are subject to jurisdiction. Consistent with this premise, WCT would be subject to personal jurisdiction in Delaware because one of its members, Cardio Holdings, is subject to personal jurisdiction in Delaware.

The Delaware Court of Chancery addressed this issue vis-a-vis a limited partnership, stating:

> Whether the "presence" of a "general partner" in the forum jurisdiction will, without more, subject the limited partnership to *in personam* jurisdiction is a question that turns on the further question whether the law of the creation of the limited partnership treats it as a jural entity. New York law, which forms and creates [the defendant], does treat [the defendant] as a legal entity, *i.e.*, having a distinct legal existence from its general or limited partners. Therefore, like a corporation or other legal entity, the simple presence in this jurisdiction of a person with management authority with respect to the entity will not itself subject the entity to jurisdiction, unless the presence is in connection with the affairs of the entity.

*Carlton Investments v. TLC Beatrice Int'l Holdings, Inc.*, Civ. A. No. 12950, 1995 WL 694397, at *11 (Del. Ch. Nov. 21, 1995). Similar to New York, the laws of Texas, under which WCT was formed, treat LLCs as distinct jural entities. Article 4.03(c) of the Texas Limited Liability Company Act states that a "member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object is to enforce a member's right against or liability to the limited liability company." Tex. Rev. Civ. Stat. Ann. art.1528n. Applying Delaware law, then, the court

15

treats WCT as Texas treats WCT, which is to say as a separate jural entity not subject to the personal jurisdiction of its members.[11]

As none of plaintiffs' arguments persuades the court that personal jurisdiction over WCT is proper, the motion to dismiss is granted with respect to WCT.[12]

---

[11]This conclusion is not inconsistent with the case to which plaintiffs cite, *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 466 (1st Cir. 1990). The court in *Donatelli* stated the "general rule" as being that "jurisdiction over a partner confers jurisdiction over the partnership," the primary reason being that "a partner is deemed by law and contract to be the partnership's general agent." *Id.* Outside the partnership context, however, the court explained that whether the jurisdictional characteristics of a member can be attributed to the entity depended on "the extent of control, if any, exercised by the [entity] over its members." *Id.* at 469. On the record here, there is no argument that WCT controls Cardio Holdings.

[12]Even if the court found personal jurisdiction over WCT, the "first to file" rule would be grounds for dismissing this action in favor of the earlier filed Texas suits. As this court has stated, "[w]here proceedings involving the same parties and issues are pending simultaneously in different federal courts, the first to file rule requires the dismissal of the second-filed suit absent exceptional circumstances." *Abbott Labs. v. Johnson and Johnson, Inc.*, 524 F. Supp. 2d 553, 557 (D. Del. 2007) (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976-79 (2d Cir. 1988)). In the first Texas suit, BSC has a counterclaim requesting that the federal court in Texas declare the '475 patent as invalid and unenforceable. BSC makes the same declaratory request in this court regarding the '475 patent. (D.I. 1 at ¶ 4) However, BSC argues that the noninfringement claims in the instant suit do not involve the same legal issues as the first Texas suit because the PROMUS® and TAXUS LIBERTÉ® stents were not at issue there. In the first Texas suit, WCT broadly complains that BSC is infringing the '475 patent by its "manufacture, use, sale and/or offer for sale of **BSC's Taxus products, and other products and services related to coronary, carotid and peripheral stents** . . . ." (D.I. 12, ex. 2 at ¶ 10) (emphasis added) While "BSC's Taxus products" would seem to include TAXUS LIBERTÉ® stents, "other products and services related to coronary, carotid and peripheral stents" would include the PROMUS® brand stents. Because the same parties and the same legal issues are pending in the Eastern District of Texas, the "first to file" rule would be appropriate alternative grounds to dismiss the instant suit in favor of the earlier filed Texas suit.

## B. Subject Matter Jurisdiction Over Cardio Holdings

Cardio Holdings moves to dismiss for lack of subject matter jurisdiction of the declaratory judgment claims against it because it does not own the '475 patent and, therefore, is not party to an actual controversy with respect to the '475 patent. Plaintiffs' only response is that Cardio Holdings is party to an actual controversy as WCT's alter ego. As the court has determined that WCT is not an alter ego of Cardio Holdings, plaintiffs have failed to demonstrate "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The motion to dismiss is granted, then, with respect to Cardio Holdings.

## V. CONCLUSION

For the aforementioned reasons, the court grants defendants' motion to dismiss (D.I. 21). An appropriate order shall issue.